IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2001-0371 |
| | ) | DEPARTMENT A |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| MARCOS ANTONIO HERRERA, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20003466

Honorable Paul S. Banales, Judge Pro Tempore

AFFIRMED

Janet Napolitano, Arizona Attorney General
  By Randall M. Howe and Cynthia A. Ryan                                   Tucson
                                                              Attorneys for Appellee

Susan A. Kettlewell, Pima County Public Defender
  By Brian X. Metcalf                                                      Tucson
                                                            Attorneys for Appellant

H O W A R D, Judge.

¶1        A jury found defendant/appellant Marcos Herrera guilty of driving under the influence of intoxicating liquor (DUI) and driving with a blood alcohol concentration (BAC) of .10 or above. The jury also acquitted Herrera of three counts of child abuse. The trial court

suspended the imposition of sentence and placed Herrera on concurrent two-year terms of probation. He raises several issues on appeal, none of which merits reversal.

## BACKGROUND

¶2 We view the facts and reasonable inferences therefrom in the light most favorable to sustaining the verdicts. *State v. Nihiser*, 191 Ariz. 199, 201, 953 P.2d 1252, 1254 (App. 1997). Officer Bender observed Herrera driving his car seventy-two miles per hour in a fifty-mile-per-hour speed zone.[1] After initiating a traffic stop, Bender observed that Herrera had "very watery eyes" and that a strong odor of air freshener was emanating from the car. Bender asked Herrera to exit the car to separate him from the air freshener. Once Herrera was outside the car, Bender noticed a "moderate odor of intoxicants" coming from Herrera's mouth. Bender then conducted a horizontal gaze nystagmus (HGN) test on Herrera and saw six out of six possible signs of impairment. Bender also had Herrera perform two field sobriety tests, the walk-and-turn test and the one-leg-stand test, in which Herrera exhibited additional signs of impairment. Bender placed Herrera under arrest, transported him to a police substation, and conducted two breath tests to determine his BAC. Each of those tests produced a BAC result of .126. Herrera admitted that he had consumed two beers or, alternatively, "one big one."

## MOTIONS FOR MISTRIAL

¶3 In testifying about the walk-and-turn and one-leg-stand tests, Bender stated: "[T]hey have done studies that show a correlating percentage of people, if you see two cues in each test, you see a correlating percentage as to how many people are over .10." Herrera

---

[1]The presence of Herrera's three minor children in the car formed the basis of the child abuse charges.

2

objected to this testimony and moved for a mistrial. The trial court found the testimony improper, but denied Herrera's motion and offered to give the jury a curative instruction, which Herrera declined. Later, when asked by the prosecutor about his "view of [Herrera's] performance" on the field sobriety tests, Bender testified, "I felt he was impaired to the slightest degree." Herrera objected to this testimony and again requested a mistrial. After some discussion, the trial court denied Herrera's second motion for a mistrial, struck the objectionable testimony, and gave the jury a curative instruction. Herrera contends the trial court erred by denying his motions for a mistrial. We review a trial court's denial of a motion for a mistrial for a clear abuse of discretion. *State v. Stuard*, 176 Ariz. 589, 601, 863 P.2d 881, 893 (1993).

¶4　　　"A declaration of a mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262, 665 P.2d 972, 984 (1983). If a witness makes an inadmissible statement, a trial court "must evaluate the situation and decide if some remedy short of mistrial will cure the error." *Id*. We address Herrera's motions for mistrial separately.

¶5　　　The state's use of a defendant's performance on field sobriety tests, such as the walk-and-turn and one-leg-stand tests, is "limited to showing a symptom or clue of impairment." *State ex rel. Hamilton v. Mesa City Court*, 165 Ariz. 514, 517, 799 P.2d 855, 858 (1990). The state cannot use a defendant's performance on field sobriety tests as evidence of a BAC above .10.[2] *See id*. at 517, 518 n.3, 519; 799 P.2d at 858, 859 n.3, 860. Consequently, Bender gave

---

[2]In contrast, the parties may use HGN test results to "challenge or corroborate" a chemical analysis of a defendant's BAC. *State ex rel. Hamilton v. Mesa City Court*, 165 Ariz. 514, 517

impermissible testimony that studies have shown a "correlating percentage" of people who exhibit two signs of impairment on field sobriety tests and have a BAC above .10. But, for three reasons, we cannot conclude the trial court erred in denying Herrera's motion for a mistrial.

¶6 First, Bender did not reveal the correlating percentage that the studies had shown. For all the jury knew, the correlating percentage could have been extremely low. Thus, Bender's impermissible testimony was too indefinite to thwart justice. *See Adamson*, 136 Ariz. at 262, 665 P.2d at 984. Second, the state introduced two breath test results showing that Herrera had a BAC of .126. And Herrera had exhibited six out of six signs on the HGN test, which can be used to corroborate a breath test result. *Hamilton*, 165 Ariz. at 517 n.2, 799 P.2d at 858 n.2. Accordingly, to the extent that Bender's testimony had any tendency to prove a BAC above .10, it was merely cumulative. Third, the trial court offered to give the jury a curative instruction, which Herrera rejected. A trial court is in the best position to determine an appropriate remedy for trial error that will preserve a defendant's right to a fair trial. *See Adamson*, 136 Ariz. at 262, 665 P.2d at 984. Based on the record here, we cannot conclude the trial court abused its discretion in denying Herrera's first motion for a mistrial.

¶7 Bender's testimony that he believed Herrera had been "impaired to the slightest degree" was also inappropriate. "[O]pinion evidence is usually not permitted on how the jury should decide the case." *Fuenning v. Superior Court*, 139 Ariz. 590, 605, 680 P.2d 121, 136 (1983); *see also* Comment, Ariz. R. Evid. 704, 17A A.R.S. When a law enforcement officer in a DUI case parrots the language of A.R.S. § 28-1381(A)(1), he or she is essentially giving an

___

n.2, 799 P.2d 855, 858 n.2 (1990).

4

opinion that the defendant is guilty.[3] *See Fuenning*, 139 Ariz. at 605, 680 P.2d at 136. Because such an opinion "embraces all issues" on that particular charge, it is beyond the scope of permissible opinion testimony. *Id*. It does not follow, however, that such testimony must always result in a mistrial.

¶8 Here, the trial court immediately struck Bender's inappropriate opinion and gave the jury a detailed curative instruction. The trial court repeated that curative instruction at the close of evidence and also instructed the jury that it was to disregard any stricken testimony. Additionally, in denying Herrera's second motion for a mistrial, the trial court expressed its firm belief that Herrera could still receive a fair trial. Thus, the trial court engaged in the analysis required by *Adamson*, 136 Ariz. at 262, 665 P.2d at 984. Based on the trial court's multiple remedial efforts and its express conclusion that Herrera would not be deprived of a fair trial, we cannot conclude the court abused its discretion by denying Herrera's second motion for a mistrial.

## MARITAL PRIVILEGE

¶9 Herrera contends that he was entitled to invoke the marital fact and communication privilege in A.R.S. § 13-4062 to prevent his wife from testifying and that, therefore, the trial court erred in permitting the state to invoke the child abuse exception in A.R.S. § 13-3620(G) and call his wife as a witness against him. He asserts that A.R.S. § 13-3623(F)(1) limits the term "abuse" to the definition contained in A.R.S. § 8-201(2), which requires an actual injury. Because there were no injuries in this case, Herrera argues, the exception to the marital privilege

---

[3]Section 28-1381(A)(1), A.R.S., states in pertinent part: "It is unlawful for a person to drive . . . [w]hile under the influence of intoxicating liquor . . . if the person is *impaired to the slightest degree*." (Emphasis added.)

did not apply. The state responds that, for purposes of the exception to the privilege in § 13-3620(G), the term "abuse" includes the substantive offense of child abuse. The state further argues that, because it had charged Herrera with three counts of child abuse under § 13-3623(B), which does not require an actual injury, it was permitted to call Herrera's wife under the § 13-3620(G) exception to the marital privilege.

¶10 Section 13-4062, which defines the marital privilege in criminal cases, states in pertinent part:

> A person shall not be examined as a witness in the following cases:
>
> 1. A husband for or against his wife without her consent, nor a wife for or against her husband without his consent, as to events occurring during the marriage, nor can either, during the marriage or afterwards, without consent of the other, be examined as to any communication made by one to the other during the marriage.

Section 13-3620(G) states that the marital privilege "shall not pertain in any civil or criminal litigation or administrative proceeding in which a child's . . . abuse . . . is an issue."

¶11 Under § 13-3623(B), the offense of child abuse occurs, inter alia, when, "[u]nder circumstances other than those likely to produce death or serious physical injury to a child," a person "having the care or custody of a child . . . permits a child . . . to be placed in a situation where the person or health of the child . . . is endangered." Section 13-3623(F)(1) states that, for purposes of that section, "[a]buse" of a child means "abuse as defined in § 8-201, except for those acts in the definition that are declared unlawful by another statute of this title." Finally, § 8-201 limits "abuse" to physical injury or serious emotional damage.

6

¶12        The issue of the meaning of the term "abuse" in § 13-3620(G), creating an exception to the marital privilege, is an issue of statutory interpretation that we review de novo. *State v. Wilson*, 200 Ariz. 390, ¶4, 26 P.3d 1161, ¶4 (App. 2001). We interpret the marital privilege narrowly because it excludes relevant evidence and impedes the search for the truth. *Blazek v. Superior Court*, 177 Ariz. 535, 537, 869 P.2d 509, 511 (App. 1994); *see also State ex rel. Udall v. Superior Court*, 183 Ariz. 462, 466, 904 P.2d 1286, 1290 (App. 1995) (abrogation of privileges has "not been narrowly interpreted").

¶13        Nothing in the language of § 13-3620(G), which creates an exception to the marital privilege in cases involving child abuse, expressly limits the meaning of "abuse," as used in that section, to the definition of abuse in § 8-201(2). Rather, the language of § 13-3620(G) suggests a broad scope for the exception to the marital privilege. The statute specifically states that the exception shall apply in any civil or criminal litigation or administrative proceeding involving child abuse. Accordingly, we conclude that the legislature intended the exception to apply to all forms of child abuse that may be the subject of criminal proceedings.[4] Prosecution for child abuse under § 13-3623(B) is one such form of child abuse. That remains true even when endangerment, rather than the infliction of an actual injury, forms the basis for the prosecution.

¶14        That § 13-3623(F)(1) incorporates the definition of abuse in § 8-201(2) does not change our analysis.[5] Section 13-3623(F) specifically limits the incorporation to that section.

_____

[4]We need not decide the applicability of the exception in any other context.

[5]The application of § 13-3623(F)(1) is somewhat uncertain. Section 13-1323(C) uses the term "abuse" to refer to a situation involving only exposure to drug manufacturing, not physical injury.

Thus, that definition does not affect the meaning of abuse in § 13-3620(G), which creates the exception to the privilege. Nor does the incorporation of that definition limit the criminal offense of child abuse to those circumstances that fit within § 8-201(2). Section 13-3623 explicitly includes as child abuse circumstances in which the child is endangered but not necessarily injured. It would be incongruous for the marital privilege to apply to some cases under § 13-3623(B) but not to other cases under the same subsection. Rather, § 13-3623 clearly extends the criminal offense of child abuse to those situations in which a child is endangered but not actually injured. Accordingly, the exception to the marital privilege in § 13-3620(G) also extends to situations in which a child is endangered but not actually injured. Consequently, the trial court did not abuse its discretion by permitting the state to call Herrera's wife as a witness.

¶15 Herrera also contends the trial court erred by twice informing the jury that he had attempted to invoke his marital privilege to prevent the state from calling his wife as a witness against him. Herrera did not object to the trial court's statements below and, therefore, has waived all but fundamental error. *State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991). Fundamental error is error that deprives a defendant of a right essential to his or her defense and of a fair trial or that goes to the very foundation of the defendant's theory of the case. *State v. Valenzuela*, 194 Ariz. 404, ¶15, 984 P.2d 12, ¶15 (1999).

¶16 The court had listed Herrera's wife as a prospective witness during jury voir dire. In his opening statement, Herrera informed the jury that his wife would testify to certain facts. Herrera later told the court he had changed his mind, would not call his wife as a witness, and would invoke the marital privilege. The court then explained to the jury that Herrera's wife would not be excluded from the courtroom with the other witnesses because Herrera had invoked the

8

marital privilege and his wife would not be a witness. Later, after the state requested that she testify pursuant to the child abuse exception, the trial court changed its ruling and explained to the jury that Herrera's wife would in fact be a witness.

¶17 The jury acquitted Herrera on the child abuse charges. As a result, he cannot assert that the trial court's statements were fundamental error as they related to those charges. To the extent his wife testified about issues relating to the DUI and BAC charges, her testimony was favorable to Herrera. That favorable testimony sufficiently dispelled any improper inference the jury might have drawn from Herrera's attempt to invoke the marital privilege. Accordingly, we cannot conclude that the trial court committed fundamental error. That during closing arguments the prosecutor commented on Herrera's wife's potential bias is of no moment. That subject was a proper one for closing argument. Likewise, that the trial court refused to ask Herrera's wife a juror's question about Herrera's driving record does not change our conclusion.

## PROSECUTORIAL MISCONDUCT

¶18 During closing argument, Herrera's attorney argued that Officer Bender's description of Herrera's performance on the field sobriety tests was unreliable and subjective. In doing so, counsel specifically mentioned a videotape of Herrera's field sobriety tests that had not been introduced into evidence but presumably would have given the jury an objective view of the tests. Ultimately, counsel stated, "[W]hen you consider the evidence that you have been given, *when you consider the evidence that you haven't been given*, when you apply the nature of the investigation that went on . . . you find that Mr. Herrera was not guilty of driving under the influence that night." (Emphasis added.) In rebuttal, the prosecutor commented, "[H]ad the video shown anything other than what Officer Bender testified to, [Herrera] would have showed you that

9

video." Herrera contends the prosecutor's remark amounted to prejudicial misconduct. Prosecutorial misconduct is reversible error only if "the defendant has been denied a fair trial as a result of the actions of counsel." *State v. Dumaine*, 162 Ariz. 392, 400, 783 P.2d 1184, 1192 (1989).

¶19 "[A]dvocates are ordinarily given wide latitude in closing argument." *State v. Leon*, 190 Ariz. 159, 162, 945 P.2d 1290, 1293 (1997). It is well settled that a "prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, so long as the comment is not phrased to call attention to the defendant's own failure to testify." *State v. Fuller*, 143 Ariz. 571, 575, 694 P.2d 1185, 1189 (1985); *see also State ex rel. McDougall v. Corcoran*, 153 Ariz. 157, 160, 735 P.2d 767, 770 (1987).

¶20 Herrera clearly attacked the reliability of Bender's observations through the absence of the videotape. In fact, Herrera essentially invited the jury to consider the possible contents of that videotape in his favor. Under these circumstances, the prosecutor properly argued that Herrera could have presented the videotape to the jury had it contained exculpatory information.

¶21 Contrary to Herrera's suggestion, the prosecutor's remark did not amount to burden shifting. The comment merely prevented Herrera from drawing a positive inference from evidence that he could have presented but did not. *See Corcoran*, 153 Ariz. at 160, 735 P.2d at 770 ("Such comment is permitted by the well recognized principle that the nonproduction of evidence may give rise to the inference that it would have been adverse to the party who could have produced it.").

### JURY INSTRUCTION

¶22 Herrera lastly contends the trial court impermissibly shifted the burden of proof by instructing the jury: "Neither side is required to call as witnesses all persons who may have been present at an event disclosed by the evidence or who may appear to have some knowledge of these events or to produce all documents or evidence suggested by the evidence." Herrera did not object to this instruction below and has waived the issue on appeal. *See State v. Mann*, 188 Ariz. 220, 231, 934 P.2d 784, 795 (1997). But, before we engage in fundamental error analysis, we must first find error. *Id.* We will not find reversible error based on a particular jury instruction "'unless we can reasonably find that the instructions, when taken as a whole, would mislead the jurors.'" *State v. Sierra-Cervantes*, 201 Ariz. 459, ¶16, 37 P.3d 432, ¶16 (App. 2001), *quoting State v. Strayhand*, 184 Ariz. 571, 587, 911 P.2d 577, 593 (App. 1995).

¶23 When a defendant challenges a jury instruction, we look to the instructions as a whole to determine "whether they adequately reflect the law." *State v. Rutledge*, 197 Ariz. 389, ¶15, 4 P.3d 444, ¶15 (App. 2000). In doing so, "[w]e look at the language of the instruction[s] in view of how a reasonable juror could have construed [them]." *Sierra-Cervantes*, 201 Ariz. 459, ¶16, 37 P.3d 432, ¶16.

¶24 In addition to the challenged instruction, the trial court also instructed the jury that a "plea of not guilty means that the State must prove every part of the . . . charges beyond a reasonable doubt," and "[t]he law does not require a defendant to prove his or her innocence." The trial court then reiterated that Herrera was not "required to present any evidence," and "[t]his means that the State must prove guilt beyond a reasonable doubt." The trial court further stated, "This burden rests solely on the state and *never shifts throughout trial*." (Emphasis added.) The trial court then instructed the jury on the meaning of reasonable doubt, concluding with the

11

statement, "The state must then prove the defendant guilty as charged, which means that the state must prove each and every element of the offense[s] beyond a reasonable doubt." Taken as a whole, a reasonable juror likely would have understood the instructions to mean that, although the state need not produce every scrap of evidence available, it must produce sufficient evidence to prove the defendant guilty beyond a reasonable doubt. Thus, the trial court did not shift the burden of proof to the defendant. Accordingly, we find no error in the instruction.

**DISPOSITION**

¶25      Herrera's convictions and placement on probation are affirmed.


_____
JOSEPH W. HOWARD, Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Presiding Judge


_____
M. JAN FLÓREZ, Judge