88 P.3d 587

**The STATE of Arizona, Appellee,**

v.

**David Douglas SECORD, Appellant.**

**No. 2 CA–CR 2002–0093.**

Court of Appeals of Arizona.
Division Two, Department B.

May 3, 2004.

As Corrected May 11, 2004.

518

Terry Goddard, Arizona Attorney General, By Randall M. Howe and Karla Hotis Delord, Phoenix, for Appellee.

Susan A. Kettlewell, Pima County Public Defender, By Susan M. Quillin and Rebecca A. McLean, Tucson, for Appellant.

## OPINION

ESPINOSA, Chief Judge.

¶ 1 A jury found appellant David Douglas Secord guilty of aggravated driving under the influence of an intoxicant (DUI) while his driver's license was suspended, and the trial court placed him on five years' probation. On appeal, Secord argues the trial court erred in several evidentiary rulings and in denying his motion to compel the state to reinstate a plea offer. Because we conclude the state may, in appropriate circumstances, properly condition a plea on a defendant's foregoing disclosure of nonexculpatory evidence, and because Secord's evidentiary challenges lack merit, we affirm.

### Facts and Procedural Background

¶ 2 On September 22, 1998, Deputy Dawn Barkman stopped a vehicle for exceeding the speed limit and driving briefly onto the dirt shoulder of a road. When Barkman approached the driver, Secord, she smelled an intoxicant near the driver's window. Deputies Woolridge and Hill arrived at the scene and investigated whether Secord had been driving while under the influence of alcohol. During that investigation, Hill conducted three field sobriety tests, including a horizontal gaze nystagmus (HGN) test, a "one-leg stand" test, and a "walk-and-turn" test. Hill observed Secord's gait, appearance, and speech as he performed the tests. Hill also questioned Secord about his consumption of intoxicants. At the end of the investigation, Hill wrote a report about his observations, noting that he had used a video camera to record his investigation.

¶ 3 The state indicted Secord on one count each of aggravated DUI and aggravated driving with an alcohol concentration (AC) level of .10 or more, class four felonies.[1] The state later offered to permit Secord to plead guilty to endangerment, a class six felony, and DUI with one prior conviction, a class one misdemeanor. Defense counsel requested that he be provided the police videotape before advising Secord whether he should accept the offer. In response to that request, the state withdrew the plea offer, provided a copy of the videotape to Secord, and transferred the case to a "trial team."

¶ 4 Secord nevertheless filed with the trial court a request for a change-of-plea hearing, saying he wanted to accept the plea offer and noting the state might oppose the request because he had asked for and had received a copy of the videotape. He argued he was "entitled to review th[e] videotape" under *State v. Draper*, 162 Ariz. 433, 784 P.2d 259 (1989).[2] The state, indeed, opposed Secord's request to accept the plea offer but offered him a similar agreement that would have required him to serve more time in jail. Following a hearing, the trial court rejected Secord's argument that he had possessed a due process right to review the videotape before deciding whether to accept the original plea offer.[3] Secord declined the second plea offer, and a jury later found him guilty.

## Conditional Plea Offer

■■■■ ¶ 5 Secord argues the trial court erred in denying his motion to compel the state to reinstate its original plea offer, as-serting that the prosecutor violated Secord's right to due process by conditioning the offer on his foregoing disclosure of the videotape of his DUI investigation. The state responds that its broad discretion in charging defendants and negotiating plea agreements entitled it to withdraw the plea offer. In general, we defer to a trial court's findings of fact but review de novo its conclusions of law. *State v. Lucas*, 199 Ariz. 366, 18 P.3d 160 (App.2001).

■■■■ ¶ 6 "It is well settled that criminal defendants have no constitutional right to a plea agreement and the state is not required to offer one." *State v. McKinney*, 185 Ariz. 567, 575, 917 P.2d 1214, 1222 (1996). Moreover, the state may refuse to plea bargain so long as it has "some valid reason" and no invidious discrimination is involved. *State v. Martin*, 139 Ariz. 466, 481, 679 P.2d 489, 504 (1984). When the state does offer a plea agreement, it is free to include such conditions and terms as it deems appropriate, even harsh or coercive ones, so long as the defendant is free to accept or reject the offer. *State v. Morse*, 127 Ariz. 25, 617 P.2d 1141 (1980); *State v. McInelly*, 146 Ariz. 161, 704 P.2d 291 (App.1985); *see also State v. Felix*, 153 Ariz. 417, 737 P.2d 393 (App.1986).

¶ 7 In *Draper*, our supreme court held that a condition in a plea offer that prevented the defendant from interviewing a victim—and thereby discovering obviously relevant evidence—did not necessarily violate due process or run counter to public policy.[4] Instead, the court looked to whether the defendant's acceptance of the plea offer could

---

1. The latter charge was ultimately dismissed at trial because a retest of Secord's blood sample resulted in an AC of .09.

2. In *Draper*, the supreme court addressed whether the state had violated the defendant's right to due process by conditioning a plea offer on the defendant's waiver of his right to certain disclosure. In anchoring his claim on *Draper*, Secord sufficiently presented his due process claim to the trial court and, therefore, contrary to the state's argument, did not waive it on appeal.

3. We note that Secord did not seek special action relief from this interlocutory decision, instead choosing to proceed to trial. Although it would have been preferable for Secord to raise the issue by special action, we do not address whether his

failure to do so waived the issue on appeal, neither side having briefed the matter. *See State v. Espinosa*, 200 Ariz. 503, 29 P.3d 278 (App. 2001) (had defendant timely challenged withdrawal of plea offer, either party could have sought special action relief from court's ruling); *State v. Superior Court*, 183 Ariz. 327, 903 P.2d 635 (App.1995) (special action jurisdiction accepted because no adequate remedy by appeal of trial court's rejection of plea agreement); *State ex rel. Bowers v. Superior Court*, 173 Ariz. 34, 839 P.2d 454 (App.1992) (special action appropriate vehicle for state's challenge to trial court's interlocutory order rejecting plea agreement).

4. *Draper* preceded the victims rights provisions in the Arizona Constitution, Art. II, Sec. 2.1, and A.R.S. § 13-4401 *et. seq.*

nevertheless be considered to have been voluntary and intelligent and remanded the case for a determination of that issue. More recently, in *United States v. Ruiz*, 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002), the United States Supreme Court addressed a similar situation. There, the prosecution's proposed plea agreement offered the defendant a recommendation for a reduced sentence in exchange for her waiving her right to receive material impeachment evidence about informants and other witnesses as well as evidence supporting any affirmative defense she might assert at trial. The Court held that the plea offer did not violate the Constitution, stating that "the need for this information is more closely related to the *fairness* of a trial than to the *voluntariness* of the plea." Id. at 633, 122 S.Ct. at 2457, 153 L.Ed.2d at 597.

■ ¶ 8 Secord contends that the videotape was "critical evidence" necessary to his decision whether to accept the plea offer, a theory embraced by our dissenting colleague. It is clear, however, that the Constitution does not require that a defendant have "complete knowledge" of the state's potential case against him or her and permits a trial court to accept a guilty plea despite "various forms of misapprehension under which a defendant might labor."[5] *Id.* at 630, 122 S.Ct. at 2456, 153 L.Ed.2d at 596; *see Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (intelligent and voluntary guilty plea does not require that defendant have no misapprehension about strength and quality of prosecution's case); *see also Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30, 42 (1977) ("There is no general constitutional right to discovery in a criminal case.").

¶ 9 It is equally clear that Secord had adequate information on which to "assess the strength of the state's case," *Draper*, 162 Ariz. at 437, 784 P.2d at 263, and to ground a sufficiently knowing and voluntary decision to either accept or reject the state's plea offer. He had been charged with one count each of aggravated DUI in violation of A.R.S. § 28–1381(A)(1) and aggravated driving with an AC of .10 or more in violation of former A.R.S. § 28–1381(A)(2). See 1997 Ariz. Sess. Laws, ch. 1, § 106. The first charge required the state to prove that Secord's control of his vehicle had been impaired or "to the slightest degree affected by his consumption of the intoxicant." *Davis v. Waters*, 103 Ariz. 87, 90, 436 P.2d 906, 909 (1968); *see also State ex rel. McDougall v. Albrecht*, 168 Ariz. 128, 811 P.2d 791 (App.1991); *State v. Superior Court*, 150 Ariz. 18, 721 P.2d 676 (App.1986). The second required proof that Secord's AC had been .10 or greater "within two hours of driving or being in actual physical control of the vehicle." 1997 Ariz. Sess. Laws, ch. 1, § 106.

¶ 10 In *Draper*, the court noted that "[o]ther witnesses, evidence and the record available to a defendant at the time of entering the plea agreement," might be adequate for purposes of an intelligently entered plea. 162 Ariz. at 437, 784 P.2d at 263. At the time the state made its initial plea offer, it had provided Secord the written reports of Barkman, Woolridge, and Hill, which described Secord's driving, demeanor, appearance, symptoms of intoxication, and poor performance on the field sobriety tests. Secord also had the results of a preliminary breath test showing his AC had been well above the then-legal limit of .10 and a laboratory report of a blood test showing an AC of .105.[6] Moreover, he had exhibited six out of six signs on the HGN test, evidence that was admissible to corroborate his breath test results. *See Hamilton v. Mesa City Court*, 165 Ariz. 514, 799 P.2d 855 (1990); *State v. Herrera*, 203 Ariz. 131, 51 P.3d 353 (App.2002). We thus disagree with the dissent's characterization of this case as a "close" one and the videotape as "pivotal." We conclude that, although the videotape of Hill's portion

---

5. It should be emphasized we are not faced with the issue of whether the state may condition a defendant's acceptance of a plea offer on the state's nondisclosure of evidence in its possession it knows to be exculpatory or that establishes the defendant's factual innocence. *See McCann v. Mangialardi,* 337 F.3d 782 (7th Cir.2003).

6. At trial, a police criminalist testified that a subsequent retest in July 2001 had resulted in an AC of .09 and that the variance was due to the length of time the sample had been in storage and the repeated opening of the vials for testing.

of the investigation was clearly relevant and potentially useful to Secord's defense, it was not indispensable to his intelligent and knowing evaluation of whether to accept the state's plea offer. *See Ruiz; Felix; State v. Caperon*, 151 Ariz. 426, 728 P.2d 296 (App. 1986). Accordingly, we find no error in the trial court's denial of Secord's motion to compel the state to reinstate its first plea offer.[7]

### Evidentiary Rulings

■ ¶ 11 Secord also asserts the trial court committed numerous reversible errors in its evidentiary rulings. We will not disturb a trial court's decision to admit or exclude evidence absent an abuse of discretion. *State v. Davis*, 205 Ariz. 174, 68 P.3d 127 (App.2002).

a. Evidence of Vicodin use

■ ¶ 12 Secord first argues ·the trial court erred in admitting other act evidence that he had taken Vicodin, a prescription medication, earlier in the day he was arrested. In discussing Secord's motion in limine to preclude mention of his use of Vicodin, the prosecutor stated that the criminalist, Terri Gallegos, would testify about the effects of Vicodin when combined with alcohol. The court reserved its ruling on Secord's motion. At trial, although Gallegos said she knew about the chemical compounds and their effects on the body, she could not explain how the medication Secord had taken, combined with the alcohol he had consumed, would have affected his ability to judge, perceive, and react. The court then sustained Secord's objection and prohibited any further testimony about Vicodin.

¶ 13 Although the jury had heard Gallegos testify that Vicodin is a "narcotic analgesic" and that it acts as a "central nervous system depressant," there was no further testimony about it, and the prosecutor did not refer to it in argument. The court instructed the jury not "to be concerned about the Vicodin," saying it was "not to consider any Vicodin or any medication, prescription or otherwise, that may have been in Mr. Secord's system because there is no evidence to indicate that [it] had any effect on him." Secord did not object to these instructions, and we presume the jurors followed them. *See State v. Prince*, 204 Ariz. 156, 61 P.3d 450 (2003); *State v. LeBlanc*, 186 Ariz. 437, 924 P.2d 441 (1996). Accordingly, we see no reasonable possibility that Secord was prejudiced by the limited testimony about his Vicodin use and no reason to reverse his convictions on this ground.

b. Prosecutorial misconduct

■ ¶ 14 Alternatively, Secord contends the prosecutor committed misconduct by misrepresenting the criminalist's ability to connect Secord's Vicodin usage to the DUI charge. To warrant a reversal based on prosecutorial misconduct, the conduct "must have so permeated the trial that it probably affected the outcome and denied defendant his due process right to a fair trial." *State v. Blackman*, 201 Ariz. 527, ¶ 59, 38 P.3d 1192, 1206 (App.2002). Even if misconduct occurs, it "is harmless if we can conclude beyond a reasonable doubt that it did not contribute to or affect the verdict." *State v. Towery*, 186 Ariz. 168, 185, 920 P.2d 290, 307 (1996). The trial court commented that the prosecutor had had a good faith basis for attempting to introduce evidence of Secord's Vicodin use,[8] but was simply unable to provide enough foundation for its admission. We cannot say the court abused its discretion in finding that no misconduct had occurred. *See State v. Bolton*, 182 Ariz. 290, 307, 896 P.2d 830, 847

---

7. The dissent takes us to task for not engaging in a "weigh[ing of] the state's interest in withholding the videotape against the defendant's need of it," citing *Draper. Infra,* ¶ 25. But it is difficult to understand how the state's interest in not disclosing a particular piece of nonexculpatory evidence (for example, a crime victim's statement or the identity of a confidential informant) has much, if any, bearing on a defendant's evaluation of a plea offer if clear and sufficient evidence of the defendant's culpability is within his or her possession at the time of the offer. More-

over, *Draper* suggested such a balancing test in remanding that case for a determination of whether the withheld evidence "somehow prevented [the defendant] from entering an intelligent plea," 162 Ariz. at 438, 784 P.2d at 264, a situation not present here.

8. We note that no actual evidence that Secord had taken Vicodin on the day of his arrest was ever admitted.

(1995) ("Motions for mistrial based on prosecutorial misconduct are committed to the trial court's discretion, which will not be disturbed on appeal unless plainly abused."); *State v. Korovkin,* 202 Ariz. 493, ¶ 8, 47 P.3d 1131, 1133 (App.2002) (appellate court defers to trial court's findings of fact related to prosecutorial misconduct).

c. Preliminary breath test

■■■ ¶ 15 Secord also assigns error to the trial court's admission of the results of a preliminary breath test Woolridge administered at the scene of the stop. During Woolridge's cross-examination, defense counsel asked him why he had not performed a drug recognition evaluation. Out of the presence of the jury, Woolridge explained that the results of Secord's preliminary breath test showed his AC was .113, which was consistent with the symptoms he had exhibited. Finding the defense had "opened the door," the court permitted Woolridge to answer that the initial test had showed the presence of alcohol, but did not allow him to give the numeric result. Contrary to Secord's assertion, nothing in Woolridge's statement implied that Secord had had a higher AC than the .09 to which Gallegos had testified.

d. Limitation of impeachment evidence

■■■ ¶ 16 Secord next argues that the trial court erred in preventing him from impeaching his AC test results with evidence that the criminalist who had first tested his blood sample, Roger Corcoran, had been fired for "misconduct on the job," including accessing pornographic websites, tampering with evidence, and releasing confidential information. Gallegos later retested Secord's sample. After reviewing Corcoran's personnel file, the trial court disallowed the evidence as hearsay and irrelevant because Corcoran was not testifying and the results of his testing were not being proffered. Clearly, the reasons for Corcoran's termination were not probative of whether Gallegos's test results were accurate or whether Secord had been driving while under the influence of alcohol. *See* Ariz. R. Evid. 401, 17A A.R.S. (evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); Ariz. R. Evid. 402 (evidence must be relevant to be admissible). The trial court properly excluded the evidence about Corcoran.

e. Chain of custody

■■■ ¶ 17 Secord also challenges the chain of custody of the vial of blood Gallegos had tested, asserting her testimony "did not 'strongly suggest' that there was no possibility of substitution or tampering." To establish the requisite chain of custody of an evidentiary item, the state must show that possession was continuous and that the evidence is intact and unaltered. *State v. Jackson,* 170 Ariz. 89, 821 P.2d 1374 (App. 1991). If the state makes this showing, a trial court should admit the evidence "unless the defendant offers proof that the evidence has changed or been tampered with." *Id.* at 93, 821 P.2d at 1378.

■■■ ¶ 18 Gallegos testified that the property control sheet showed the signature and date for each person who had handled the vials of Secord's blood and his or her purpose in doing so. Gallegos said Secord's blood had been tested twice by another analyst before she performed her test. The seals were intact on the box in which the sample was stored, and Gallegos did not detect anything indicating anyone had tampered with it. Secord takes issue with Gallegos's testimony that the identifying labels on the vials had been removed. But, as the court correctly ruled, flaws in the chain of custody go to the weight of the evidence, not its admissibility. *State v. Morales,* 170 Ariz. 360, 824 P.2d 756 (App.1991). Here, the state showed that the vials in question were always in police possession. In the absence of any evidence to the contrary, this was sufficient to show the chain of custody. *See Jackson; State v. Moreno,* 26 Ariz.App. 178, 547 P.2d 30 (1976).

f. Cumulative error

¶ 19 Lastly, Secord maintains that all the asserted errors combined "led the jury to the inevitable conclusion that inadmissible blood tests showed a higher alcohol content than that disclosed to the jury and thereby preju-

diced [him], violating due process." But we have found no merit to any of his asserted errors, and Arizona does not subscribe to the cumulative error doctrine in this context. *State v. Hughes,* 193 Ariz. 72, 969 P.2d 1184 (1998); *State v. Prince,* 160 Ariz. 268, 772 P.2d 1121 (1989); *State v. Curry,* 187 Ariz. 623, 931 P.2d 1133 (App.1996).

¶ 20 For all of the foregoing reasons, we affirm Secord's convictions and placement on probation.

PELANDER, P.J., concurs.

ECKERSTROM, Judge, dissenting.

¶ 21 Here, the state withdrew a plea offer it had tendered to Secord merely because he sought to examine evidence that the state should already have provided him. Because the state had no substantial governmental interest in withholding the evidence and because disclosure of that evidence was, in my view, pivotal to Secord's ability to make a knowing and intelligent decision whether to enter a guilty plea, I would find that the state's action violated Secord's right to due process.

¶ 22 In Arizona, as in the rest of the country, the vast majority of criminal cases are resolved by guilty plea after negotiation. Ariz. Sup.Ct. Programs Unit, 1 *Ariz. Courts: Data Report for FY 2003,* at 63; *In re Alvernaz,* 2 Cal.4th 924, 8 Cal.Rptr.2d 713, 830 P.2d 747, 752–53 (1992) (eighty to ninety percent of criminal cases resolved by guilty plea, most the product of plea bargains); *see also Ruiz,* 536 U.S. at 632, 122 S.Ct. at 2457, 153 L.Ed.2d at 597 (plea bargaining resolves "90% or more" of federal criminal cases). In those cases, it is plea negotiation, not trial, that resolves whether a defendant committed a crime and that determines the potential range of punishment the defendant faces for that crime. Thus, viewed from the perspective of most defendants and victims, the plea bargaining phase is not only a " 'critical stage in the criminal process,' " *State v. Donald,* 198 Ariz. 406, ¶ 12, 10 P.3d 1193, 1204 (App. 2000), *quoting Alvernaz,* 8 Cal.Rptr.2d 713,

830 P.2d at 753, it is the pivotal stage in the process.

¶ 23 When courts evaluate whether the state's behavior during plea negotiations has violated a defendant's due process rights, we are monitoring a stage in the criminal process that, in many cases, defines the criminal process itself. Although the judicial branch must acknowledge and respect the separation-of-powers doctrine granting prosecutors the sole prerogative to offer a plea agreement and determine its provisions, that doctrine does not require courts to disregard and leave without remedy insults to a defendant's right to due process during plea negotiations—negotiations that the parties must ultimately ask the judicial branch to sanctify and execute during the change-of-plea and sentencing processes.

¶ 24 As the majority correctly observes, Arizona courts have repeatedly affirmed that the state alone possesses the authority to offer a plea agreement and to define the terms of any such offer. But once the state has extended an offer, our courts have not hesitated to invalidate a plea agreement or to order specific performance of a plea agreement in order to protect the defendant's constitutional or procedural rights. *Donald,* 198 Ariz. 406, ¶ 40, 10 P.3d at 1204 (specific performance of plea agreement possible remedy for denial of defendant's right to effective assistance of counsel in plea-bargaining process); *see also Draper,* 162 Ariz. at 438, 784 P.2d at 264 (setting forth three-part test to determine if plea agreement provision violates due process); *State v. Ethington,* 121 Ariz. 572, 573–74, 592 P.2d 768, 769–70 (1979) (refusing on public policy grounds to enforce plea agreement provision in which defendant waived right to appeal); *State v. Darelli,* 205 Ariz. 458, ¶¶ 23–26, 72 P.3d 1277, 1283–84 (App.2003) (vacating conviction entered after trial and ordering parties to return to specific stage of plea negotiations); *State v. Horning,* 158 Ariz. 106, 111, 761 P.2d 728, 733 (App.1988) (allowing defendant to withdraw guilty plea that had been improperly induced by promise of leniency to defendant's wife because it caused involuntary waiver of defendant's constitutional rights).[9]

9. Arizona provides defendants who plead guilty a "Rule 32 of-right" proceeding in lieu of an ap-

peal. Ariz. R.Crim. P. 32.1, 17 A.R.S.

¶ 25 Here, we address whether the state may withdraw a plea offer merely because the defendant has asserted his right to examine pivotal evidence. In so doing, we must first assess whether, based on the totality of the circumstances as represented by the record before us, the state's action meaningfully impaired the defendant's ability to enter a voluntary, knowing, and intelligent guilty plea. *See Draper,* 162 Ariz. at 436, 784 P.2d at 262; *Ruiz,* 536 U.S. at 629, 122 S.Ct. at 2455, 153 L.Ed.2d at 595. Although the majority makes this initial determination, in my view, *Draper* and *Ruiz* also require us to weigh the state's interest in withholding the videotape against the defendant's need of it. *Draper,* 162 Ariz. at 438, 784 P.2d at 264; *Ruiz,* 536 U.S. at 631, 122 S.Ct. at 2456, 153 L.Ed.2d at 596.[10] I dissent because the majority neglects to engage in that weighing process at all and, in resolving the claim against Secord, trivializes Secord's need to view the videotape in making a knowing and intelligent decision whether to accept the plea offer.

¶ 26 During oral argument, the state asserted that *Ruiz* does not endorse a weighing test but, rather, precludes any federal due process claim anchored on the deprivation of a defendant's right to examine certain disclosure materials before entering a guilty plea. But *Ruiz* does not stand for that broad conclusion. Rather, *Ruiz* addressed the narrower question of whether "the Constitution requires th[e] preguilty plea disclosure of *impeachment information.*" 536 U.S. at 629, 122 S.Ct. at 2455, 153 L.Ed.2d at 595 (emphasis added). The Court framed the issue before it as follows: "The constitutional question concerns a *federal criminal defendant's waiver* of the right to receive from prosecutors exculpatory *impeachment material*—a right that the Constitution provides as part of its basic 'fair trial' guarantee." *Id.* at 628, 122 S.Ct. at 2454, 153 L.Ed.2d at 594 (emphasis added). In rejecting the defendant's claim, the Court an-

chored its analysis in the specific features of impeachment evidence. *Id.* at 630, 632–33, 122 S.Ct. at 2455, 2456, 153 L.Ed.2d at 595, 597 ("It is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty .... The Ninth Circuit's rule risks premature disclosure of Government witness information, which, the Government tells us, could 'disrupt ongoing investigations' and expose prospective witnesses to serious harm."). The Court also emphasized case-specific protections Ruiz possessed under her proposed plea agreement as well as the Federal Rules of Criminal Procedure. *Id.* at 631, 122 S.Ct. at 2456, 153 L.Ed.2d at 596 (plea agreement required government to provide "any information establishing the factual innocence of the defendant").

¶ 27 Far from implicitly overruling *Draper,* a case that clearly sets forth a weighing test to address due process claims based on the withholding of disclosure as a condition of a plea agreement, *Ruiz* engaged in a strikingly similar analysis in reaching its conclusion. As in Draper, *Ruiz* rejected the argument that the state's withholding of disclosure in advance of a plea offer constitutes a *per se* federal constitutional violation. *Compare Ruiz,* 536 U.S. at 630, 122 S.Ct. at 2455–56, 153 L.Ed.2d at 595–96 *with Draper,* 162 Ariz. at 437, 442, 784 P.2d at 263, 268. As in *Draper, Ruiz* resolved the claim by weighing the nature of a defendant's interests in the specific disclosure in question against the nature of the state's interest in withholding it. *Ruiz,* 536 U.S. at 631, 122 S.Ct. at 2456, 153 L.Ed.2d at 596; *Draper,* 162 Ariz. at 438, 784 P.2d at 264. Indeed, Justice Thomas declined to join in the *Ruiz* majority precisely because it had engaged in a weighing process that implicitly limited its holding to the specific factual scenario before it. *Ruiz,* 536 U.S. at 633–34, 122 S.Ct. at 2457, 153 L.Ed.2d at 598 (Thomas, J., concurring) ("To the extent that the Court is implicitly draw-

---

10. In this case, the trial court also failed to engage in this necessary weighing process. Instead, it found that "the Court's intervention, as indicated by *Draper,* is limited to a determination of whether or not the plea was affected by any undisclosed terms and conditions." In so con-

cluding, the trial court overlooked the supreme court's extensive discussion in *Draper* on the propriety of plea agreement conditions that limit a defendant's access to pretrial disclosure. *Draper,* 162 Ariz. at 436–39, 784 P.2d at 262–65.

ing a line based on a . . . characterization about the usefulness of certain types of information, I can only concur in the judgment.").

¶ 28 Although the majority fails to address the propriety of the state's action in withholding the videotape, I would conclude that the state has failed to articulate any substantial governmental interest in so doing. One can readily imagine cases in which the disclosure of some information might disrupt an ongoing investigation, exact a substantial financial cost on taxpayers, or traumatize or endanger a witness. *See id.* at 631–32, 122 S.Ct. at 2456, 153 L.Ed.2d at 596–97 (noting that disclosure of impeachment information, while required by federal rules of criminal procedure, could disrupt ongoing investigations, endanger witnesses, and disrupt efficient administration of justice through early resolution of cases); *Draper,* 162 Ariz. at 438, 784 P.2d at 264 (emphasizing existence of legitimate state interest in protecting victim witnesses from further trauma). Under such circumstances, a prosecuting agency could possess legitimate grounds, anchored in good public policy, for protecting otherwise discoverable information from the plea-bargaining process.

¶ 29 But the state has asserted no such grounds here. The prosecutor assigned to the case initially suggested that the plea offer was automatically withdrawn pursuant to an office policy that provides beneficial agreements only to those willing to accept those agreements without litigation. As noted, this would be consistent with a substantial state interest in the efficient administration of justice. *See Ruiz,* 536 U.S. at 631–32, 122 S.Ct. at 2456, 153 L.Ed.2d at 596–97. However, the prosecutor eventually conceded that no office policy required him to withdraw the plea agreement in retaliation for Secord's request for appropriate disclosure and that he had withdrawn the agreement in his own discretion for his own reasons. He explained that reasoning to the court as follows: "I made the decision to allow people who're willing to take responsibility for their actions early on to be in a better position than people who want to review all of their possible options to escape liability for something that they're guilty of." Although the state is certainly entitled to reward defendants who demonstrate acceptance of responsibility with more favorable plea offers, that rationale does not apply in the context of the specific situation here. Secord had filed no motions nor engaged in any burdensome "litigation" before the state withdrew the plea offer. He had merely asked to examine evidence that should have been disclosed to him, even in the absence of a specific request, before the early plea offer deadline.[11] *See* former Ariz. R.Crim. P. 15.1(a)(1), (2), and (4), 202 Ariz. XLIX (2002). Notably, Secord's alcohol concentration suggested that his impairment, if he was impaired, might have been subtle.[12] For this reason, Secord's request to examine the videotape could have reflected an earnest desire to determine whether he had actually committed the crime with which he was charged rather than a cynical effort to avoid accepting responsibility for his actions.

¶ 30 When the prosecutor equated the mere request for information with a lack of acceptance of responsibility, he essentially conditioned his assessment of Secord's worthiness to receive a plea offer on his ignorance of the entire case against him. This

---

11. Former rule 15.1(a)(1), (2), and (4), Ariz. R.Crim. P., 16A A.R.S., required the state to disclose the videotape in question within ten days of Secord's arraignment. Secord was thus entitled to the information on May 10, 1999. He requested the disclosure from the state before accepting the plea offer on or about May 18.

12. A blood test administered within an hour of his driving showed Secord had an alcohol concentration of .09, a result within the margin of error of .08. Either number was below the alcohol concentration required to activate the legal presumption of impairment to the slightest degree at the time, .10. *See* former A.R.S. § 28–

1381(H)(3), 1997 Ariz. Sess. Laws, ch. 1, § 106. According to the state's own expert, .08 is the first threshold at which scientists will conclude that a person is necessarily impaired "to the slightest degree." Thus, Secord's blood alcohol test placed his alcohol concentration near the concentration at which scientists consider the boundaries of a person's impairment to the slightest degree. Moreover, defense counsel elicited from the expert that Secord's actual alcohol concentration *at the time of driving* might have been significantly less than the result obtained some fifty minutes later, depending on his drinking sequence and absorption rate.

condition undermined the core requisite of due process in the context of a guilty plea—that a defendant's waiver of the right to trial must be made knowingly and intelligently. *See Brady,* 397 U.S. at 748, 90 S.Ct. at 1469, 25 L.Ed.2d at 756.

¶ 31 Although the state articulated no substantial public policy grounds for conditioning its plea offer on Secord's waiver of disclosure, Secord possessed a substantial need to examine the videotape in order to intelligently assess whether to accept the state's plea offer. In evaluating Secord's need for this disclosure, we must be cognizant of circumstances that can render a particular piece of evidence superfluous to the decision whether to accept a plea offer. *See Draper,* 162 Ariz. at 438, 784 P.2d at 264 (no due process violation when defendant has sufficient access to state's evidence to assess legal situation and when other evidence overwhelmingly shows guilt); *see also Ruiz,* 536 U.S. at 630, 122 S.Ct. at 2456, 153 L.Ed.2d at 596 (federal constitution does not require "complete knowledge" of relevant case circumstances for defendant to intelligently assess plea offer). Those circumstances do not exist here.

¶ 32 In evaluating whether to plead guilty to a reduced charge, Secord was entitled to assess the prospective strength of the state's case. *See Donald,* 198 Ariz. 406, ¶ 9, 10 P.3d 1193, 1198 (to render effective assistance, attorney must advise defendant of "the relative merits of the offer compared to the defendant's chances at trial"). Secord's alcohol test result did not definitively resolve the question whether he had been impaired at the time he drove. To the contrary, the result scientifically demonstrated that the determination of any alcohol impairment would be a close question. For this reason, the precise nature of Secord's performance on the field sobriety tests and his behavior during the field investigation were pivotal in assessing his criminal liability and his chances at trial. *See id.* Although the state now claims the videotape contained essentially the same evidence it had earlier disclosed to Secord through Deputy Hill's written reports, those reports constituted nothing more than the record of Hill's subjective judg-ments of Secord's appearance and behavior during the field investigation. By viewing the videotape, the jury was able to objectively assess Secord's appearance, gait, and performance on the field sobriety tests without depending on either Secord's or the deputy's subjective judgment about those events. Under these specific circumstances, Secord needed to examine the videotape to objectively evaluate his likelihood of success in challenging Hill's conclusions on those key events before he could intelligently assess his chances of prevailing at trial. *See id.* He also needed to examine the videotape to evaluate the accuracy of his self-assessment of his condition at the time.

¶ 33 At the hearing on withdrawal of the plea offer, defense counsel underscored the importance of this information to an assessment of his client's situation as follows:

I spoke with [the prosecutor], and advised him that I felt very uncomfortable in this case ... accepting the plea without first seeing the videotape. [The prosecutor] informed me that if I was going to request the videotape, we would lose the plea, which put me in a very bad position. I couldn't really advise my client one way or the other because based on the disclosed information it's a tri[ ]al case.... so the videotape became crucial because, as I said, it was a borderline case.

. . . .

I was between a rock and a hard place.

. . . .

I mean [the videotape was] absolutely crucial. And I just don't see how I would be able to advise my client one way or the other without seeing that piece of evidence.

In my view, defense counsel's concerns were well founded. In general, one cannot imagine a piece of evidence more crucial to the outcome of a close DUI case than a videotape of the defendant's performance during the officer's field investigation. Deprived of that information, but aware of its existence, Secord would have had difficulty avowing to the trial court that his decision to plead guilty was the product of a knowing and intelligent thought process. *See Ruiz,* 536 U.S. at 629, 122 S.Ct. at 2455, 153 L.Ed.2d at 595.

¶ 34 "Given the seriousness of the matter, the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Id.*, *quoting Brady*, 397 U.S. at 748, 90 S.Ct. at 1469, 25 L.Ed.2d at 756. As one Arizona Supreme Court justice has observed, albeit in dissent: "Plea bargaining should not be reduced to a shameful imitation of a midday game show, where a deal is struck only when 'the price is right' with no knowledge of what's behind door number three." *State v. Solano*, 150 Ariz. 398, 403, 724 P.2d 17, 22 (1986) (Gordon, J. dissenting).

¶ 35 The state has a substantial and legitimate interest in using the plea bargaining process to expedite cases and to protect some forms of otherwise disclosable information. By the same token, our criminal justice system has a substantial interest in ensuring that pleas are the product of knowing and intelligent thought processes. When the state's action meaningfully impairs a defendant's ability to engage in that thought process and does so without any grounds anchored in public policy, I believe the state violates the defendant's due process rights. *See Draper*, 162 Ariz. at 436, 784 P.2d at 262. Specifically, the state violated Secord's right to due process in the plea negotiations here when it (1) withheld a pivotal piece of information necessary for Secord to make a knowing and intelligent decision whether to accept the plea offer and (2) did so without any substantial governmental purpose for its action. For this reason, I respectfully dissent.

¶ 36 I concur in the majority's resolution of all other issues.