NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DERRICK SHAWN BARNETT, *Appellant*.

No. 1 CA-CR 18-0763
FILED 3-19-2020

Appeal from the Superior Court in Coconino County
No. S0300CR201700678
The Honorable Dan R. Slayton, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Coconino County Public Defender's Office, Flagstaff
By Brad Bransky
*Counsel for Appellant*

## MEMORANDUM DECISION

Acting Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Chief Judge Peter B. Swann and Judge David B. Gass joined.

**W E I N Z W E I G**, Judge:

¶1 Derrick Shawn Barnett appeals his convictions and sentences for two counts of first-degree murder, three counts of misconduct involving weapons, one count of first-degree burglary, one count of theft, one count of cruelty to animals and one count of theft of means of transportation. We affirm on all counts.

## FACTS AND PROCEDURAL BACKGROUND[1]

¶2 Barnett moved to Arizona from Colorado in April 2017 to live with his father in a camper trailer outside of Williams. He was on felony probation in Colorado where he had an outstanding warrant for his arrest. Just weeks later, Barnett left the trailer after a physical confrontation with his father and moved into the woods.

### A. The Murders

¶3 Barnett built a campfire near the home of a married couple, Michael and Nora. On the evening of May 1, Barnett stormed the couple's house. Michael was home alone; Nora was at work. Barnett seized Michael's handgun and rifle. He then killed Michael, firing three gunshots into his head and neck. When Nora returned home, Barnett chased her down, cornered her in the bathroom and killed her. He fired a gunshot into her head at close range. He also shot and killed the couple's dog.

¶4 The next morning, police discovered the lifeless bodies of Nora and Michael in different spots, surrounded by empty shell casings. Nora was found inside the house. Michael was found outside behind a woodpile. Several guns were missing. Police later found Barnett's campsite, plus Nora's abandoned cell phone.

---

[1] We view the facts in the light most favorable to sustaining the jury verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

### B. Flight, Arrest and Recorded Jail Call

¶5        Barnett stole the couple's white Jeep and fled back to his Colorado hometown, living at his friend's house for a few days. He arrived in the white Jeep, but quickly abandoned the vehicle at a campsite near his friend's house. He bought a used car for $2,000 in cash and more ammunition.

¶6        Barnett left his friend's house without warning, leaving two backpacks behind, which contained Nora's electronic cigarette and Michael's handgun. The handgun had been used at the murder scene.

¶7        Meanwhile, two campers discovered the white Jeep, which had no license plate, and called police. Barnett's DNA was found on the Jeep's steering wheel and gear shift. A water bottle inside the vehicle also contained his DNA.

¶8        Barnett encountered his uncle and half-brother on May 5. He said he was in trouble and would be living in the woods "for a while." He also mentioned he had lots of cash and "was probably going to go to jail for a long time." The half-brother noticed a handgun and rifle in Barnett's possession, and he quickly informed Barnett's father that Barnett had returned. The father then contacted the Coconino County Sheriff's Office to report Barnett's potential connection to the murders and current whereabouts.

¶9        Later that day, Colorado police spotted Barnett's used car. A high-speed chase ensued, which ended when Barnett rolled the car. Police found Michael's rifle and handgun inside the car with Barnett's fingerprints. The State's firearm expert testified that both weapons were fired at the murder scene.

¶10       Barnett was arrested. He called his mother from jail. The call was recorded. Barnett's mother asked about the murders and said Barnett was a suspect in the investigation. Barnett expressed no surprise, stating that he was a "goner" and would "never get out." When his mother said that Arizona is "a capital murder state," Barnett said, "I'm ready to accept my responsibility [and] ready to die."

### C. Trial and Conviction

¶11       A grand jury indicted Barnett for two counts of first-degree murder, three counts of misconduct involving weapons, and one count each

of first-degree burglary, theft, cruelty to animals and theft of means of transportation.

¶12        Following a ten-day trial, the jury convicted Barnett on all charges.  The superior court imposed two consecutive natural-life sentences for the murders, plus several consecutive terms totaling 87 years for burglary, theft, weapons misconduct and theft of transportation.  Barnett timely appealed.

## DISCUSSION

### A.        Barnett's Motion to Continue

¶13        Barnett first argues the superior court erred by denying his motion to continue the trial.  Barnett moved for a continuance on July 13, 2018, around five weeks before trial was set to begin on August 21, claiming a continuance was required for two reasons: his criminal defense investigator had "recently left" that position and he had not hired a replacement; and his ballistics expert needed more time to review the State's recently-disclosed crime scene reports and raw data.  The State opposed any continuance, arguing that Barnett's investigator had been gone for months and the State had disclosed all scientific reports in January 2018, including reports on DNA, latent prints, firearms and autopsies.  The State further explained that its most recent disclosure was limited to a "handful of pages" that measured the distance between items of evidence at the crime scene, the locations of which had been disclosed to defense counsel "for several months."

¶14        We review the denial of a continuance for an abuse of discretion and only disturb the trial court's decision if the defendant demonstrates prejudice from the denial.  *State v. Forde*, 233 Ariz. 543, 555, ¶ 18 (2014).  A trial may be continued "only on a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice."  Ariz. R. Crim. P. 8.5(b).

¶15        We find no abuse of discretion on this record for several reasons.  First, the superior court announced the August 2018 trial date in November 2017, and Barnett confirmed the date on several occasions in court filings and hearings.  Second, Barnett's criminal investigator left his position several months before the July 13 motion to continue.  Moreover, Barnett still had five weeks before trial began.  Third, the State disclosed its substantive expert reports in January 2018, over seven months before trial, and its recent supplement was insubstantial.

## B.    Barnett's Motion for Mistrial

¶16         Barnett next argues the superior court improperly denied his motion for mistrial after the jury heard inadmissible testimony about his possible drug use and past violence. Before trial, Barnett moved to preclude the introduction of evidence that he had "a recipe or list of ingredients purportedly to make methamphetamine" in his backpack, and any "statements of witnesses speculating that defendant was 'high' or using illicit drugs." The State did not object and the court granted the motion.

¶17         Barnett claims the State twice violated the superior court's order. First, a detective was asked to describe the father's trailer and answered that it was "fairly messy and kind of disarray" and "[t]here were some chemicals and other items inside." A juror later asked, "what kind of chemicals [were] inside the trailer?" The court and parties agreed not to respond. The court offered to strike the initial reference to "chemicals," despite ruling the detective had not violated its prior order. Barnett declined the offer.

¶18         Second, the prosecutor asked Barnett's father about a conversation he had with Barnett over the "probation issue." Father responded that Barnett "was just trying to get away from the life he had [and] the escalation of violence with his girlfriend," adding that he suspected "they were both shooting up drugs." Barnett objected. The superior court held a conference in chambers and offered to provide a curative instruction. Barnett declined. With the court's consent, however, father testified on cross-examination that he never witnessed Barnett using drugs at the trailer.

¶19         Barnett moved for a mistrial based on the references to chemicals, violence and drug use. The superior court denied the motion. We review for an abuse of discretion, recognizing that the superior court "is in the best position to determine whether the evidence will actually affect the outcome of the trial." *State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000).

¶20         A mistrial may be declared if the court determines that a witness's remarks "call[ed] attention to information that the jurors would not be justified in considering for their verdict" and the jurors "were influenced by the remarks." *Id.* And because a mistrial is "the most dramatic remedy for trial error," it should be granted "only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Dann*, 205 Ariz. 557, 570, ¶ 43 (2003).

¶21    We find no abuse of discretion. The detective's ambiguous and passing reference to "chemicals" did not improperly convey information to the jury about Barnett's methamphetamine use or possession. *See State v. Lamar*, 205 Ariz. 431, 439, ¶ 40 (2003). Barnett's counsel also declined a curative instruction. *See State v. Herrera*, 203 Ariz. 131, 134, ¶ 6 (App. 2002) (holding that trial court did not abuse its discretion by denying a mistrial based in part on defendant's declination of a curative instruction). Similarly, father's reference to possible drug use and violence was vague and unlikely to improperly influence the jury. And here again, Barnett's counsel declined a curative instruction. Moreover, father confirmed on cross-examination that he never saw Barnett using drugs during his visit to Arizona, which ameliorated any potential prejudice. The superior court acted reasonably. *Id.*

### C.    DNA Evidence

¶22    Barnett contends the superior court erred by allowing the State's DNA expert to present inconclusive DNA evidence found on bolt cutters and candy wrappers inside the victim's home. Barnett argues the evidence was unduly prejudicial under Rule 403 because the DNA results did not conclusively "match" Barnett's profile. Unfair prejudice is an "undue tendency to suggest decision on an improper basis, such as emotion, sympathy[] or horror." *State v. Mott,* 187 Ariz. 536, 545 (1997).

¶23    We review the admission of evidence for an abuse of discretion. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006). We find none. The DNA evidence was relevant here because the analyst could not exclude Barnett as a contributor, which increased the likelihood of his presence at the victims' house. Beyond that, the DNA expert qualified and limited the value of the evidence as "inconclusive," recognizing the "low level" of DNA, and never implied an exact "match." *See State v. Escalante-Orozco*, 241 Ariz. 254, 274, ¶¶ 49-50 (2017), *abrogated on other grounds by State v. Escalante*, 245 Ariz. 135 (2018).

### D.    Barnett's Hearsay Objections

¶24    Barnett next argues the superior court erred by allowing a detective to provide hearsay evidence about the alibis of two witnesses, including Barnett's friend and a carpenter who visited the victim's home.

¶25    We review for abuse of discretion and find none. *Forde*, 233 Ariz. at 564, ¶ 77. The testimony was not hearsay because the statements were not offered for the truth of the matter asserted—that these men were at work or celebrating when Nora and Michael were murdered. The

statements were instead elicited and offered to explain the detective's investigative decisions and conduct, responding to Barnett's argument that law enforcement rushed to a flawed conclusion and never explored alternative theories and suspects. *See State v. Dunlap*, 187 Ariz. 441, 457 (1996) ("[B]ecause the defendant elicited [a statement] to show the inadequacy of the investigation, and did not offer it for the truth of the matter asserted, it was not hearsay.").

### E.      Juror Contact and Misconduct

**¶26**      And last, Barnett challenges the court's requirement that defense counsel provide good cause in an affidavit before communicating with jurors, which Barnett claims was unconstitutional as a prior restraint on the jury's free speech.  But the court did not restrict the jurors from communicating with anyone; it lifted the admonishment and explained that "[j]urors remain free to speak with whomever they wish."  The ruling was permissible under *State v. Paxton*, 145 Ariz. 396 (App. 1985).

**¶27**      Barnett argues the court erred by refusing to investigate juror misconduct after Barnett's mother claimed to overhear jurors talking about Barnett's mental state, yet admitted she was unsure "who said what."  The court rejected the claim as speculative and unpersuasive.  The record shows no abuse of discretion.

### CONCLUSION

**¶28**      We affirm Barnett's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA

7