726 P.2d 629

The STATE of Arizona, Appellee,

v.

Richard Gonzales FIGUEROA, Appellant.

No. 2 CA–CR 4203.

Court of Appeals of Arizona, Division 2, Department B.

July 28, 1986.

Review Denied Oct. 7, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Diane M. Ramsey, Phoenix, for appellee.

Curtis & Cunningham by George Haskel Curtis, Tucson, for appellant.

## OPINION

BIRDSALL, Judge.

When Air Force Staff Sergeant Patrick O'Kane came home the night of January 7, 1983, he found the appellant, Richard Figueroa asleep on the bed beside his wife, Tamara O'Kane. She did not know the appellant was there. She had gone to sleep while her husband was out with friends shooting pool.

The police were called and they arrested the appellant. A jury found him guilty of first degree criminal trespass. The court found one prior felony conviction as alleged and he was given the presumptive sentence of 2.25 years in prison.

This appeal raises four issues: 1) sufficiency of the evidence; 2) failure to give an instruction; 3) failure to properly instruct on involuntary intoxication; and 4) excessive sentence.

We affirm the conviction and sentence.

## SUFFICIENCY OF THE EVIDENCE

In order to be guilty of the crime, the appellant had to either knowingly enter the O'Kane home unlawfully or knowingly remain there unlawfully. The appellant testified that he had no memory of anything from the time he left a nearby bar until he found himself in jail. It was his theory that he had mistaken the apartment for his own which was only a few minutes away, but in a different complex. Mrs. O'Kane was probably asleep when he entered. She testified the doors were all securely locked. When he was awakened, the appellant told Sergeant O'Kane that Mrs. O'Kane had let him in. She denied this and the appellant did not testify to it. Rather, as we have observed, he testified that he had no memory of entering the O'Kane apartment. There were no signs of any forced entry. Consequently, the jury had much conflicting evidence to consider. However, we believe there was substantial evidence to survive a defense motion for a directed verdict.

## FAILURE TO GIVE AN INSTRUCTION SUA SPONTE

█ The appellant now claims he was entitled to a jury instruction on mistake of fact. He did not make such a request or object to the instructions that were given; therefore, this claimed error is waived unless it was fundamental. We agree that the jury could have concluded that the appellant entered the apartment because he was intoxicated and did not know what he was doing. The trial court properly gave the following instruction on intoxication:

No act committed by a person while intoxicated is less criminal by reason of his having been in such condition. However, the crime of criminal trespass in the first degree requires that the Defendant's intent for entering or remaining be unauthorized. You may consider evidence of

his intoxication in determining whether he had that intent.

Because of the evidence of intoxication and there being no direct evidence of mistake, we believe the jury was adequately instructed. The court's failure to, sua sponte, give an instruction on mistake of fact was not fundamental error. Assuming, arguendo, it was error, it did not go to the foundation of the case or take from the defendant a right essential to his defense or prevent him from having a fair trial. *State v. Thomas,* 130 Ariz. 432, 636 P.2d 1214 (1981).

## INVOLUNTARY INTOXICATION

▆ The trial court gave the following instruction on involuntary intoxication:

Involuntary intoxication is a defense to a criminal charge if it deprives the defendant of the ability to know the nature and quality of his acts or if he did know, the ability to know that what he was doing was wrong.

The appellant claims that the trial court should have defined the term "defense" and should have instructed that the state had the burden to prove he was not involuntarily intoxicated. Not having been urged in the trial court, these objections were waived. There was no error. It was not necessary that the term "defense" be defined because it has an ordinary meaning. Cf. *State v. Borbon,* 146 Ariz. 392, 706 P.2d 718 (1985); *State v. Zaragoza,* 135 Ariz. 63, 659 P.2d 22, *cert. denied,* 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983).

▆ The appellant has not cited any authority for the proposition that the state has the burden of proving that his intoxication was not involuntary. We do not believe, as the appellant argues, that analogies can be made to our former insanity statute or to the self defense provisions. Instead we believe our supreme court has answered this question in *State v. Gretzler,* 126 Ariz. 60, 612 P.2d 1023 (1980), *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). Gretzler had argued in the trial court that because of drug intoxication he could not form the specific intent required as an element of first degree murder. The state presented evidence of premeditation. Gretzler apparently produced evidence of drug intoxication. The opinion does not state whether the intoxication was voluntary or involuntary. We do not believe it makes any difference. In *Gretzler* our supreme court held that the defendant was properly required to prove the affirmative defense of intoxication because the prosecution was required to prove intent as well as every other element of the crime beyond a reasonable doubt. See *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). See also Paul H. Robinson, 2 Criminal Law Defenses § 176(a) (1984), and particularly footnote 9 at 340. See also 1 Criminal Law Defenses, supra, at § 65(a)(1). The only evidence of involuntary intoxication in the instant case was the following testimony of the appellant on direct examination:

Q What do you remember about that night?

A After I drank the Jack Daniels, I began feeling lightheaded. And then I felt warm and flushed. And that, after that, it, it was all kinds of different things and movements that I don't remember. I don't remember at all.

Q What is the next thing that you remember clearly?

A Clearly, being in jail.

Q Do you have idea now what happened to you?

A Yes. Two weeks after this happened, I went over to Alfie's. I began asking some questions, and a friend of mine told me that somebody put something in my drink as a joke. He didn't want to tell me what it was. He didn't want to disclose the friend, but he just told me that somebody did put something in the drink.

And on cross examination:

Q ... Who told you that somebody had put something in your drink?

A David Bishop.

Q Who is he?

A He's a friend of mine that goes, goes to Alfie's.

And I have known him because he, he, he—I met because he put carpet in my mom's house one time. He has a carpet business. And we became friends.

Q Is he the bartender at Alfie's?

A No.

Q Who is the bartender?

A Baca. She was the one who was tending bar. She told me the same thing, that she had heard the same thing.

Q That she had heard that?

A Yes.

Q What are their addresses?

A I don't know. I don't know. I think I had her phone number, telephone number. I don't have it now with me.

Q David Bishop says he knows the name of the person who put something in your drink?

A Yes, he won't tell me though.

\* \* \* \* \* \*

Q Was it your testimony that you don't remember leaving the bar at all?

A Yes.

Q Yes, that's your testimony?

A Yes.

Q How many friends were there that evening?

A When we first got there it was about ten or 15.

Q Were they, in your last memory, how many friends were there?

A About the same.

Q Did any of them indicate to you at any time later that you were really out of it that evening?

A I don't remember.

Q Have you talked to any of those friends?

A Yes. Yes, I have. They, they had said they never, they had never seen me like that, and I wasn't me.

Assuming that this testimony presented at least some evidence of involuntary intoxication, the state did not then have the burden to prove that the defendant was not so intoxicated. The defendant has both the burden of producing evidence and the burden of persuasion regarding that defense.

## EXCESSIVE SENTENCE

 The sentence being for the presumptive term and the court having found no mitigating factors, we will not disturb it.

Affirmed.

FERNANDEZ and LACAGNINA, JJ., concur.