IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,        )
                             )        2 CA-CR 2007-0074
                Appellee,    )        DEPARTMENT A
                             )
        v.                   )        O P I N I O N
                             )
SHAWN DE NEAN EDMISTEN,       )
                             )
                Appellant.   )
_____)

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20060019

Honorable Frank Dawley, Judge Pro Tempore

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Kent E. Cattani and David A. Sullivan                          Tucson
                                                        Attorneys for Appellee

Robert J. Hirsh, Pima County Public Defender
  By Frank P. Leto                                                  Tucson
                                                       Attorneys for Appellant

H O W A R D, Presiding Judge.

¶1        After a jury trial, Shawn Edmisten was convicted of several felony offenses

including burglary, aggravated assault, kidnapping, armed robbery, and drive-by shooting.

On appeal, Edmisten contends the trial court erred by giving erroneous jury instructions and

the prosecutor engaged in misconduct during closing argument. For the following reasons, we affirm.

**Facts**

¶2        "We view the facts in the light most favorable to sustaining the convictions." *State v. Robles*, 213 Ariz. 268, ¶ 2, 141 P.3d 748, 750 (App. 2006). Armed with various weapons, Edmisten and three other perpetrators invaded a home, with the intent to steal drugs, by kicking in a door and attacking the residents inside. The perpetrators found no drugs but stole two handguns and left in a car. When a sheriff's deputy tried to pull their car over, Edmisten pointed a handgun at the deputy. During an ensuing car chase, Edmisten and one of his codefendants shot at two patrol cars and one passing motorist. The innocent motorist was struck by a bullet and suffered severe injuries. The car containing Edmisten and the others eventually crashed into a ditch, and the occupants fled into the desert.

¶3        Edmisten approached a house carrying an AK-47 rifle. The residents of the house, a family with two children, were sitting on the back porch. Edmisten demanded car keys and then ordered everyone into the house. He told the family that the police were after him and he did not want to get caught. After learning one of the residents had called 911, Edmisten himself called 911 and told the operator he was the owner of the house and "everything was fine, that the person moved on." He then ripped the telephone from the wall and removed the battery from another, portable telephone. Edmisten also took control of a cellular telephone, which he used to call someone to ask for a ride. He then watched the six o'clock television news to see coverage of the events, and he asked the residents about different transportation possibilities including whether he could ride a horse they owned and

2

whether they owned an all-terrain vehicle. After one of the residents asked him to put the rifle down so as not to make everyone nervous, Edmisten removed the clip, hid the weapon behind a couch, and put the clip under a cushion. He also asked for and received a change of clothes.

¶4     Edmisten then discovered there was a portable telephone on the back porch and ordered one of the residents to retrieve it. The resident saw sheriff's deputies outside and informed them that Edmisten was in the house. The deputies entered and arrested Edmisten. After he was in custody, Edmisten told a sergeant that he had taken LSD and that the emergency lights on the sergeant's car were "wigging him out." The deputy who had initially tried to stop the perpetrators' car drove to where Edmisten was being held and identified Edmisten as the person who had aimed a gun at him.

¶5     At trial, Edmisten's primary defense was that he had been involuntarily intoxicated at the time of the crimes. Edmisten's former girlfriend, Yolanda V., testified that, earlier on the day of the offenses, she had secretly slipped two Ecstasy pills into his drink. Yolanda testified that Ecstasy made Edmisten disoriented, uncomfortable because it prevented him from urinating, and incapable of driving a car. The state challenged Yolanda's credibility by eliciting testimony that she had not come forward with this evidence until approximately five months after the date of the offenses and by pointing out inconsistencies in her story with respect to the precise date she had allegedly given Edmisten the drug. The state also suggested Yolanda's motive for testifying was that she wanted Edmisten to pay child support for the child they had together.

3

**Jury Instructions**

¶6       Edmisten first argues the trial court's instructions on involuntary intoxication were "incomplete, confusing, and misled the jury as to the State's and defendant's respective burdens of proof." Division One of this court has described the involuntary intoxication defense as permitting a defendant "to negate the requisite state of mind for a criminal act." *State v. McKeon*, 201 Ariz. 571, ¶ 20, n.2, 38 P.3d 1236, 1240 & n.2 (App. 2002); *cf.* A.R.S. § 13-503 (prohibiting *voluntary* intoxication as defense "for any criminal act or requisite state of mind"). As a general matter, the burden in a criminal trial is on the state to prove the defendant's guilt beyond a reasonable doubt. *See State v. Portillo*, 182 Ariz. 592, 594, 898 P.2d 970, 972 (1995). This burden includes any required mental state. *See State v. Amaya-Ruiz*, 166 Ariz. 152, 173, 800 P.2d 1260, 1281 (1990) (state has burden to prove every element of offense including mental state). And the statutes do not expressly provide for any burden-shifting when a defendant offers evidence of involuntary intoxication in an attempt to negate the culpable mental state for the offenses charged. *See McKeon*, 201 Ariz. 571, n.2, 38 P.3d at 1240 n.2 (noting legislature "neither abolished the State's burden of proving that a defendant possessed the requisite state of mind at the time of the offense, nor abolished the defendant's opportunity to introduce evidence to counter the State's evidence").

¶7       The state, however, impliedly argues involuntary intoxication is an affirmative defense and relies on *State v. Figueroa*, 151 Ariz. 213, 215, 216, 726 P.2d 629, 631, 632 (App. 1986), for the proposition that the burdens of proof and persuasion are on the defendant. But since *Figueroa* was decided, the legislature has abolished all common law

4

affirmative defenses and provided that any affirmative defense can only exist by statute. *See* A.R.S. § 13-103(A); 1997 Ariz. Sess. Laws, ch. 136, § 3. Today, no Arizona statute explicitly makes involuntary intoxication an affirmative defense. And, pursuant to § 13-103(B), the term "'affirmative defense' . . . does not include . . . any defense that either denies an element of the offense charged or denies responsibility." Thus, involuntary intoxication is not an affirmative defense, and *Figueroa* is no longer good authority for determining the applicable burden of proof and persuasion.

¶8            We conclude, consistent with *McKeon*, that involuntary intoxication is a defense that "denies an element of the offense charged or denies responsibility" as provided in § 13-103(B). *See McKeon*, 201 Ariz. 571, ¶ 20, n.2, 38 P.3d at 1240, 1240 n.2. Therefore, when the defendant offers evidence of involuntary intoxication, the burden remains on the state to prove beyond a reasonable doubt that the defendant is guilty of the offenses charged, which necessarily includes proving the requisite mental state beyond a reasonable doubt.[1]

---

[1]We acknowledge Judge Hall's special concurrence in *McKeon*, in which he argued that the defense of involuntary intoxication does not exist in Arizona unless it is pled as the affirmative defense of temporary insanity under A.R.S. § 13-502. *McKeon*, 201 Ariz. 571, ¶¶ 39, 44, 38 P.3d at 1244, 1245. If involuntary intoxication were raised as an insanity defense, the burden would be on the defendant to prove his insanity resulting from involuntary intoxication by clear and convincing evidence. *See* § 13-502(c). Numerous other jurisdictions allow an involuntary intoxication defense only as a form of insanity defense. *See* Paul H. Robinson, 2 *Criminal Law Defenses* § 176(a) (2008); *see also Commonwealth v. Smith*, 831 A.2d 636, ¶ 9 (Pa. Super. Ct. 2003); *State v. Gardner*, 601 N.W.2d 670, 673-74 (Wis. Ct. App. 1999); *State v. Voorhees*, 596 N.W.2d 241, 250 (Minn. 1999); *People v. Wilkins*, 459 N.W.2d 57, 59-60 (Mich. Ct. App. 1990) (collecting cases). In this case, Edmisten did not pursue an insanity defense. But because neither party has argued on appeal that *McKeon* was incorrectly decided, we do not decide today whether we agree with the *McKeon* majority or concurrence.

*See Portillo*, 182 Ariz. at 594, 898 P.2d at 972; *Amaya-Ruiz*, 166 Ariz. at 173, 800 P.2d at 1281.

¶9 At Edmisten's request, the trial court provided the following instruction on involuntary intoxication:

> Intoxication resulting from the involuntary use of alcohol or drugs may be considered by you with respect to the culpable mental state required to prove an offense. The requisite mental states are "intentionally" or "with intent to[,"] "knowingly[,"] "recklessly" and "with premeditation[."]

> If you find that the defendant became intoxicated solely as a result of drugs or alcohol administered to him against his will or against his knowledge, you should then consider whether the degree of intoxication precluded the defendant from acting with a particular mental state or states required to establish an offense.

Edmisten argued below that involuntary intoxication was similar to a justification defense and that the "jurors should [also] be instructed that the burden is on the State to affirmatively disprove the intoxication [defense]." The court rejected Edmisten's analysis and his oral request for this separate instruction but instructed the jury on the state's burden to prove defendant's guilt beyond a reasonable doubt using the language mandated in *Portillo*, 182 Ariz. at 596, 898 P.2d at 974. The court also instructed that each charged offense required proof of particular elements including a specific mental state.

¶10 On appeal, Edmisten argues the trial court erred in failing to instruct the jury on the level of proof necessary to show involuntary intoxication, failing to instruct that the state had the burden to prove every element of the offenses beyond a reasonable doubt, and failing to instruct on the operative effect of a finding of involuntary intoxication by

6

explaining that, if the jurors "had a reasonable doubt about the defendant's mental state based on his involuntary intoxication, they could acquit or find him guilty of a lesser offense."[2] But Edmisten did not raise these issues below, and his objection to the court's refusal to instruct that the state must affirmatively disprove intoxication did not preserve these new claims of error. *See* Ariz. R. Crim. P. 21.3(c) (grounds of objection to instruction must be stated distinctly); *see also State v. Schurz*, 176 Ariz. 46, 54, 859 P.2d 156, 164 (1993) (general objection to instruction does not preserve specific).

¶11        When a defendant fails to raise an objection below, we review for fundamental error. *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005); *see also* Ariz. R. Crim. P. 21.3(c). Fundamental error involves "'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607, *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). With regard to jury instructions, fundamental error occurs "when the trial judge fails to instruct upon matters vital to a proper consideration of the evidence." *State v. Laughter*, 128 Ariz. 264, 267, 625 P.2d 327, 330 (App. 1980). To prevail on a claim of fundamental error, the appellant must first show error and then show that the error is fundamental and

---

[2]In his reply brief, Edmisten repeated his contention below that involuntary intoxication is like a justification defense and for the first time argued that, under a recent amendment to A.R.S. § 13-205(A), the legislature imposed on the state the burden to prove the defendant had not acted with justification. An argument first raised on appeal in the reply brief is waived, and we will not address it. *State v. Ruggiero*, 211 Ariz. 262, n.2, 120 P.3d 690, 695 n.2 (App. 2005).

prejudicial. *Henderson*, 210 Ariz. 561, ¶¶ 20, 23, 115 P.3d at 607, 608. For several reasons, we find no fundamental, prejudicial error here.

¶12          First, the trial court did not fail to instruct on a level of proof. As we already observed, the court properly instructed the jury that the state had the burden of proving the defendant's guilt beyond a reasonable doubt. *See Portillo*, 182 Ariz. at 594, 898 P.2d at 972. Because involuntary intoxication is not a defense that triggers any type of burden-shifting, there was no other level of proof on which to instruct.

¶13          Second, although our supreme court has approved instructions using the "every element" language that Edmisten claims on appeal was erroneously omitted, *see State v. Orendain*, 188 Ariz. 54, 55, 56, 932 P.2d 1325, 1326, 1327 (1997), Edmisten has cited no authority that would require the trial court to use that language.[3] As we stated above, the trial court properly instructed the jury on the state's burden, using the language mandated by our supreme court in *Portillo*, 182 Ariz. at 596, 898 P.2d at 974.

¶14          Third, the trial court did not fail to instruct the jury on the "operative effect" of a finding of involuntary intoxication. The court explained that the jury could consider the evidence of involuntary intoxication "with respect to the culpable mental state required to prove an offense." And, again, the court told the jury that, if it had a reasonable doubt as defined in *Portillo*, 182 Ariz. at 596, 898 P.2d at 974, it should find Edmisten not guilty. Thus, the court did instruct the jury on what to do if it determined Edmisten had been involuntarily intoxicated.

---

[3]Although an instruction using the "every element" language was not required, adding such language may indeed be helpful to juries.

8

¶15 In addition, during closing argument, Edmisten explained any ambiguity in the instructions. *See State v. Johnson*, 205 Ariz. 413, ¶ 11, 72 P.3d 343, 347 (App. 2003) (appellate court will consider jury instructions "in context and in conjunction with the closing arguments of counsel"); *see also State v. Martinez*, 175 Ariz. 114, 118, 854 P.2d 147, 151 (App. 1993). Edmisten told the jury that the state had to "prove each and every element, including the mental state." He reminded the jury that the state had the burden to prove him guilty beyond a reasonable doubt. And he told the jurors that if they concluded he had been under the influence of a drug to the point where he could not form the requisite mental state, then they must find him not guilty.

¶16 The state, during closing argument, also reminded the jury that it had the burden to prove the defendant's guilt beyond a reasonable doubt. And during rebuttal argument, the state asserted: "[E]ven if Mr. Edmisten had taken those drugs without his knowledge, all that allows you to do is say, gee, given that fact, is there evidence that he intended to commit these crimes independent of that?" The state then summarized all the evidence it had presented to show Edmisten was "able to form the intent to make decisions" and concluded the jury should find this was overwhelming evidence of guilt.

¶17 Thus, both parties clarified the instructions concerning who had the burden of proof, and both emphasized the issue of whether the state had met its burden to prove Edmisten had the requisite mental state in light of the evidence of involuntary intoxication. We can safely conclude that these instructions, together with the arguments, left the jury "with the unqualified impression that each element of the crime," including mental state, "must be proven beyond a reasonable doubt." *Orendain*, 188 Ariz. at 56, 932 P.2d at 1327.

9

Therefore, any error in the instructions—including the omission of an instruction that the jury could acquit if they had a reasonable doubt about the defendant's mental state in light of the evidence of involuntary intoxication—did not constitute fundamental error. *Cf. State v. Tucker*, 215 Ariz. 298, ¶¶ 65, 69, 160 P.3d 177, 195-96, *cert. denied*, ___ U.S. ___, 128 S. Ct. 296 (2007) (error in instructing jury on burden of proof regarding mitigation evidence not fundamental); *State v. Moody*, 208 Ariz. 424, ¶¶ 188, 193, 94 P.3d 1119, 1161-62 (2004) (misstatement of law in instruction on voluntary intoxication not fundamental error).

¶18　　　　　Moreover, the evidence that Edmisten was actually involuntarily intoxicated was weakened considerably by the challenges to Yolanda's credibility and the evidence of Edmisten's behavior during the incidents. A review of that behavior does not support Edmisten's contention that he "was sufficiently deprived of his reason that he did not intend the natural results of his actions." *McKeon*, 201 Ariz. 571, ¶ 24, 38 P.3d at 1241. On the contrary, the evidence shows he made numerous deliberate decisions, was aware he was engaging in criminal activity, and was calculating his options for escape. And the fact that Edmisten had admitted at the time of his arrest to having taken LSD further compromised his evidence of involuntary intoxication. *See* § 13-503 (temporary intoxication from voluntary ingestion of illegal substance "not a defense for any criminal act or requisite state of mind"); *cf. Burchfield v. State*, 464 S.E.2d 27, 28 (Ga. Ct. App. 1995) (testimony defendant's girlfriend slipped drug into defendant's coffee not "conclusive evidence" of involuntary intoxication where defendant consumed substantial amount of alcohol prior to offense). Thus, even were we to conclude fundamental error did result from the instructions, there is

10

no reasonable probability the jury would have reached a different result, and Edmisten has not shown prejudice. *See Henderson*, 210 Ariz. 561, ¶¶ 26, 27, 115 P.3d at 608, 609.

¶19    At oral argument, Edmisten challenged for the first time the portion of the involuntary intoxication instruction that read, "you should then consider whether the degree of intoxication precluded the defendant from acting with a particular mental state." Edmisten argued this language, specifically the use of the word "precluded," improperly suggested to the jury that Edmisten had some burden of proof to show he did not have the requisite mental state. But Edmisten himself requested this instruction below. Therefore, to the extent the language to which he now objects was an incorrect statement of law, he invited the error, and we will not consider it on appeal. *See State v. Logan*, 200 Ariz. 564, ¶ 9, 30 P.3d 631, 632-33 (2001). Moreover, arguments raised for the first time at oral argument are generally waived. *State v. Murdaugh*, 209 Ariz. 19, ¶ 29, 97 P.3d 844, 851 (2004).

¶20    Also at oral argument, Edmisten expanded on his contention that the trial court erred in not giving a separate instruction on reasonable doubt as to mental state with regard to involuntary intoxication. He contended for the first time that our supreme court's analysis in *State v. Rodriguez*, 192 Ariz. 58, 961 P.2d 1006 (1998), controls and it required the court to give such an instruction. In *Rodriguez*, the court held that, when a defendant offers evidence in support of an alibi defense, the trial court should instruct the jury on alibi in a manner that will prevent the jury from "incorrectly assum[ing] that the defendant bears the burden of proving his alibi." *Id.* ¶ 25. The proffered instruction in *Rodriguez* stated:

>    The defendant has produced evidence of being absent at
> the time and place the alleged crime was committed. If you
> have a reasonable doubt whether the defendant was present at

the time and place the alleged crime was committed, you must find the defendant not guilty.

*Id.* ¶ 30. Edmisten now argues a similar instruction regarding involuntary intoxication was necessary in his trial to prevent the risk that the jury would incorrectly conclude Edmisten had some burden of proof with respect to his involuntary intoxication defense.

**¶21** We recognize a conceptual similarity between the alibi and involuntary intoxication theories in that each generally originates from the defense. Again arguments raised for the first time at oral argument are generally waived. *Murdaugh*, 209 Ariz. 19, ¶ 29, 97 P.3d at 851. And, in *Rodriguez*, the defendant had requested the alibi instruction at trial and had therefore preserved the issue for appeal. 192 Ariz. 58, ¶ 15, 961 P.2d at 1009. Here, Edmisten did not request the instruction and therefore, as stated above, we review only for fundamental error and prejudice. *See Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607. Assuming without deciding that Edmisten would have been entitled to an instruction comparable to that in *Rodriguez*—had he requested it—as we have already concluded above, any error in omitting that instruction in this case was neither fundamental nor prejudicial. *Cf. State v. Valenzuela*, 194 Ariz. 404, ¶¶ 14-16, 984 P.2d 12, 15-16 (1999) (failure to instruct on reckless manslaughter as lesser-included offense denied defendant right essential to defense and went to foundation of theory of defense).

### Prosecutorial Misconduct

**¶22** Edmisten also contends the prosecutor engaged in misconduct during closing argument. Because he did not object to the alleged instances of misconduct, we review his

12

allegations for fundamental error. *See State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005).

**¶23** To show fundamental error, the defendant must first prove error—that is, here, that misconduct actually occurred. *Id*. ¶ 23; *State v. Harrod*, 218 Ariz. 268, ¶ 35, 183 P.3d 519, 529 (2008). After establishing error,

> "[t]o prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. Reversal on the basis of prosecutorial misconduct requires that the conduct be so pronounced and persistent that it permeates the entire atmosphere of the trial."

*Harrod*, 218 Ariz. 268, ¶ 35, 183 P.3d at 529, *quoting State v. Hughes*, 193 Ariz. 72, ¶ 26, 969 P.2d 1184, 1191 (1998). Prosecutors have "wide latitude in their closing arguments to the jury." *State v. Comer*, 165 Ariz. 413, 426, 799 P.2d 333, 346 (1990). When one party raises an argument that is improper or irrelevant, "the other party may have a right to . . . respond[] with comments . . . on the same subject." *Pool v. Superior Court*, 139 Ariz. 98, 103, 677 P.2d 261, 266 (1984). We will not reverse a conviction because of a prosecutor's improper comments during closing argument unless there is a "'reasonable likelihood' that the 'misconduct could have affected the jury's verdict.'" *State v. Newell*, 212 Ariz. 389, ¶ 67, 132 P.3d 833, 847 (2006), *quoting State v. Atwood*, 171 Ariz. 576, 606, 832 P.2d 593, 623 (1992).

**¶24** Edmisten first argues the prosecutor made comments that improperly "appealed to the fear of the jury, unfairly inflamed their passion, and unfairly appealed to their prejudice and sympathy." During Edmisten's closing argument, defense counsel discussed the

13

differences in Edmisten's behavior while committing the various offenses charged and in his demeanor in the courtroom. During the state's rebuttal argument, the prosecutor said:

> Now, I'm not sure what counsel is asking you to do, but, in terms of when he talks to you about you have seen Mr. Edmisten sitting here this last week and you noticed his demeanor and, gee, does that look like the demeanor of somebody who would do all of these violent crimes, well, ladies and gentlemen, we certainly expect defendants, when they come into this courtroom, to sit here and be somewhat polite and not start shooting people. If that was the case, we would have a problem. We would expect this defendant to sit here before the jury and act polite and act just like he has been the last few days. His demeanor in court has nothing to do with whether or not he committed these crimes on December 22nd of 2005.

¶25 The prosecutor's comments about Edmisten's in-court demeanor responded directly to a point defense counsel had raised and fell well within the latitude afforded attorneys during closing argument. *See Comer*, 165 Ariz. at 426, 799 P.2d at 346. Even if the prosecutor's comment could be considered improper or irrelevant, Edmisten's counsel opened the door to such argument, and the prosecutor was entitled to respond. *See Pool*, 139 Ariz. at 103, 677 P.2d at 266.

¶26 Edmisten next argues the prosecutor engaged in misconduct by addressing Edmisten's failure to call a certain witness to testify and thus confused the jury regarding who had the burden of proof. "It is well settled that a 'prosecutor may properly comment upon the defendant's failure to present exculpatory evidence, so long as the comment is not phrased to call attention to the defendant's own failure to testify.'" *State v. Herrera*, 203 Ariz. 131, ¶ 19, 51 P.3d 353, 359 (App. 2002), *quoting State v. Fuller*, 143 Ariz. 571, 575, 694 P.2d 1185, 1189 (1985). "Such comment is permitted by the well recognized principle

that the nonproduction of evidence may give rise to the inference that it would have been adverse to the party who could have produced it." *State ex rel. McDougall v. Corcoran*, 153 Ariz. 157, 160, 735 P.2d 767, 770 (1987). Our supreme court has stated: "It strikes us as elemental fairness to allow the State to comment upon the defense's failure to adduce potentially exculpatory evidence to which defendant had access when defendant is attacking the accuracy of the State's evidence." *Id.*

¶27 Here, a deputy testified that, after Edmisten was apprehended, the deputy had identified Edmisten as the person who had pointed a gun at him during the police chase. Edmisten offered evidence in an attempt to show the identification had never happened. The prosecutor merely pointed out during closing arguments that, although Edmisten had no burden to present any evidence or prove anything, he could have called another deputy who—according to the first deputy's testimony—had been present at the time of the identification. "Elemental fairness" allowed the state to comment on Edmisten's failure to call this "potentially exculpatory" witness. *Corcoran*, 153 Ariz. at 160, 735 P.2d at 770; *see also Herrera*, 203 Ariz. 131, ¶ 19, 51 P.3d at 359. The state was not unreasonable in suggesting that Edmisten's failure to produce the witness gave rise to an inference that the witness's testimony would have been unfavorable to Edmisten.[4] *See Corcoran*, 153 Ariz. at

_____

[4]Edmisten cites *State v. Corona*, 188 Ariz. 85, 89-90, 932 P.2d 1356, 1360-61 (App. 1997), for the proposition that the state cannot comment on the defendant's failure to call an expert witness when no evidence has been presented that the defendant consulted an expert. In discussing a case addressing a similar issue, the court in *Corona* reasoned "the restriction on such comment was proper . . . 'because defendants did not call the subject experts, the jury knew nothing about them and there was no need to explain why they did not testify.'" *Id.*, *quoting Gordon v. Liguori*, 182 Ariz. 232, 236, 895 P.2d 523, 527 (App. 1995). But here, the jury heard evidence that another deputy was present when the testifying deputy

160, 735 P.2d at 770. Because we conclude the state did not engage in prosecutorial misconduct, Edmisten cannot sustain his burden to show fundamental error. *See Henderson*, 210 Ariz. 561, ¶ 23, 115 P.3d at 608 (to establish fundamental error, defendant must first show error).

**Conclusion**

¶28    In light of the foregoing, we conclude no fundamental error resulted from the trial court's instructions to the jury or from the prosecutor's remarks during closing argument. We therefore affirm Edmisten's convictions and sentences.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

_____
JOHN PELANDER, Chief Judge

_____
J. WILLIAM BRAMMER, JR., Judge

---

identified Edmisten, and arguably there was a need to explain why the other deputy did not testify. The reasoning in *Corona* is therefore inapplicable.