NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHARLES T. GRIMES, *Appellant.*

No. 1 CA-CR 19-0322
FILED 5-14-2020

Appeal from the Superior Court in Maricopa County
No.  CR2017-002784-001
The Honorable Kathleen H. Mead, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Thomas Baird
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1 Defendant Charles Grimes appeals his convictions and sentences for one count of burglary in the third degree, a class 4 felony; and two counts of threatening and intimidating, class 6 felonies. Grimes argues the prosecutor engaged in misconduct by referring to inadmissible evidence during the trial. For the following reasons, we affirm.

## BACKGROUND

¶2 One evening a security guard working at the Mill Cue Club in Tempe observed a seemingly intoxicated customer (Grimes) walking out of the employee-only storage closet carrying a case of Red Bull. Because the bar did not sell bulk items to customers, the security guard confronted Grimes, who explained that he purchased the case of Red Bull for $500. The guard directed Grimes to set the case down and called for additional security to have him removed from the premises.

¶3 When Grimes heard he was being kicked out, he began making threats to return to the Club with a gun and "his boys," to shoot the guard. A scuffle ensued between Grimes and several security guards outside the club. The guards subdued and restrained Grimes. Police officers arrived and took Grimes into police custody.

¶4 While Grimes was being booked into jail, Tempe Police Officer Neff filled out a GMIC [Gang Member Identification Card], based on his observation of (1) Grimes' clothing and colors, and (2) his gang-related tattoos, and identified him as an affiliate of the street gang, the Folk Nation. Based on his training and experience, Officer Neff noted that Grimes' black Oakland Raiders baseball cap was indicia of membership with the gang because "black is one of the predominate colors" the gang wears, and because the Raiders are "one of the teams that . . . a lot of criminal street gangs identify with." Grimes' red shirt and red shoes were indicia of affiliation with a subset of the Folk Nation called the Black Disciples. Besides the clothing, Officer Neff identified Grimes' tattoo of the

number "360," which represents "360 degrees of knowledge" within the gang.

¶5        The defense sought to preclude evidence that, in 2008, Grimes made threats to Phoenix Police Officer Zollars and identified himself as a gang member. The superior court ruled that evidence of the threats from 2008 would not be admissible because they would be unduly prejudicial; but the fact that Grimes identified himself as a gang member would be admissible because it was more probative than prejudicial on the issue of gang affiliation. *See* Ariz. R. Evid. 403. When the prosecutor questioned Officer Zollars about the 2008 incident, he asked:

> [The Prosecutor]: And during your contact with the defendant on January 31, 2008, did the defendant make statements towards you?
>
> [Zollars]: Yes, he did.
>
> [The Prosecutor]: Okay. Without getting into the substance of those statements, were his statements very memorable to you?
>
> [Zollars]: Yes.
>
> [The Prosecutor]: During that contact, did the defendant make statements in which he invoked the name Gangster Disciples?
>
> [Zollars]: Yes, he did.

¶6        Shortly thereafter, a juror submitted two questions to the court: (1) "What was this call about involving the [d]efendant?" and (2) "Why was this 'gang' information given from the [d]efendant to the officer?"

¶7        After conferring with counsel, the court responded, "We have a question. The first one I can't ask *for legal reasons.* The second one I'm just going to answer why was the information given to defendant from the officer? And he has already answered it and said it was a spontaneous statement." (Emphasis added.)

¶8        During closing arguments, defense counsel stated:

> The only person that came in here and said, yeah, he claimed
> to be a gang member was someone that saw him 11 years ago

and didn't even write the name of the gang in his report. But now comes in and says: Oh, yeah, it was Gangster Disciple. I remember, I remember it was Gangster Disciple and he said he was going back to Chicago. I didn't put that in the report, but I remember.

**¶9** Then, in rebuttal closing arguments, the prosecutor responded:

Defense counsel also mentioned the defendant's statements to Officer Zollars. Now *for legal reasons*, we couldn't get into the substance of that but what you were told by the judge and what Officer Zollars testified to, is it was a memorable statement. He remembers the defendant invoking Gangster Disciples and that he was going to return to Chicago. (Emphasis added.)

Grimes did not object to the prosecutor's argument.

**¶10** The jury convicted Grimes of one count of burglary in the third degree, a class 4 felony; and two counts of threatening and intimidating, class 6 felonies; and found that he committed the offenses while on community supervision release. Grimes timely appealed.

## DISCUSSION

**¶11** Grimes asserts the prosecutor engaged in misconduct by referring to excluded evidence in his rebuttal closing argument. Because Grimes did not object on this basis at trial, we review only for fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19–20 (2005). Grimes contends it was improper for the prosecutor to tell the jury about excluded evidence "to make its case more persuasive in closing arguments." Grimes argues this statement warrants the reversal of his conviction.

**¶12** Under fundamental-error review, a defendant must first prove that misconduct occurred. *State v. Edmisten*, 220 Ariz. 517, 524, ¶ 23, (App. 2009). Prosecutorial misconduct is not "merely the result of legal error, negligence, mistake or insignificant impropriety." *Pool v. Super. Crt.*, 139 Ariz. 98, 108 (1984). Rather, viewed in its entirety, it is "intentional conduct" that the prosecutor "knows to be improper and prejudicial and which he pursues for any improper purpose." *Id.* at 108–09. Prosecutors have "wide latitude" in closing argument. *State v. Jones*, 197 Ariz. 290, 305, ¶ 37 (2000).

¶13        Grimes has failed to prove that the statement made by the prosecutor amounted to misconduct. Here, the prosecutor's statement—that "*for legal reasons*, [h]e couldn't get into the substance" of Grimes' statements to Officer Zollars—parroted the exact language the superior court used when answering the relevant juror question. (Emphasis added.) The statement was made in rebuttal to defense counsel's remarks in closing regarding the officer's testimony that he recalled Grimes self-identifying as a gang member 11 years prior. The prosecutor's comment was tethered to the court's response to the juror question and did not express or imply meaning to the precluded statement beyond the scope of what had already been admitted.

¶14        Accordingly, Grimes has not shown misconduct. *See Edmisten*, 220 Ariz. at 524, ¶ 23. To the contrary, the prosecutor omitted reference to any threat, which the court deemed inadmissible as prejudicial. Instead, the prosecutor focused on the admissible purpose of that statement to Officer Zollars—that Grimes previously identified himself as a gang member.

**CONCLUSION**

¶15        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA