NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BOB HOLT WALDRUP, *Appellant.*

No. 1 CA-CR 20-0007
FILED 02-04-2021

Appeal from the Superior Court in Mohave County
No. S8015CR201900938

The Honorable Douglas R. Camacho, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian R. Coffman
*Counsel for Appellee*

By Harriette P. Levitt, Tucson
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge James B. Morse Jr. and Judge Maria Elena Cruz joined.

---

**M c M U R D I E**, Judge:

¶1         Bob Holt Waldrup appeals his convictions and sentences for four counts of driving while under the influence. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL BACKGROUND

¶2         Officer Richard Castillo was dispatched to a restaurant to answer a call for a welfare check of a man sitting in a vehicle. The vehicle was parked askew in an accessible parking spot. At Castillo's request, the man produced an ID, identifying him as Waldrup. A records check revealed that Waldrup's license was suspended, and he was required to have an ignition interlock device attached to his vehicle. The officer observed the keys in the ignition, and a review of the officer's body camera footage showed there was no ignition interlock device installed.

¶3         Officer Dylan Teschler arrived to help Castillo. Teschler noticed that Waldrup had "red bloodshot watery eyes and slow slurred speech." Waldrup told Teschler that he had been at two bars, explaining that he had three pints of beer at one and two at the other. The bars closed at 2:00 a.m., and Waldrup had a receipt from the restaurant timed at 4:44 a.m. The bars were approximately a mile from the restaurant.

¶4         Waldrup told the officers that a friend had driven him to the restaurant and gave the friend's first and last name. The officers asked for the friend's location and contact information. Waldrup could not provide it, and the officers could not find the name in their database. Asked where he was headed next, Waldrup said he wanted to go to a third bar, about a half-mile away.

---

[1]      We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against Waldrup. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

¶5        Teschler asked Waldrup to submit to a field sobriety test to measure his balance and coordination. Waldrup refused but submitted to a horizontal gaze nystagmus test. Based on that test, the officers concluded that Waldrup was intoxicated and arrested him. A subsequent blood test determined that Waldrup's blood-alcohol level was 0.110.

¶6        The State charged Waldrup as follows: Count 1: "aggravated driving a vehicle while under the influence of intoxicating liquor"; Count 2: "aggravated driving a vehicle under the influence of intoxicating liquor while required to equip [the] vehicle with an ignition interlock device"; Count 3: "aggravated driving a vehicle while under the influence of intoxicating liquor with an alcohol concentration of .08 or more"; and Count 4: "aggravated driving a vehicle while under the influence of intoxicating liquor with an alcohol concentration of .08 or more while required to equip [the] vehicle with an ignition interlock device." In Counts 2 and 4, but not Counts 1 and 3, the State alternatively alleged actual physical control.

¶7        During closing arguments, the State argued that there was no evidence that Waldrup had a friend drive him to the restaurant because Waldrup did not provide the friend's contact information, the officers could not verify the friend's existence, and the defense did not call the friend as a witness. The State told the jurors that they could find that Waldrup, not a friend, drove from the second bar to the restaurant. During the arguments, Waldrup argued he did not have actual physical control over the vehicle at the restaurant parking lot, and the State argued he did.

¶8        The jurors convicted Waldrup on all counts. The verdicts declared Waldrup guilty of each count for either driving, or alternatively, having actual physical control of the vehicle. The superior court sentenced Waldrup to concurrent, mitigated one-year terms of imprisonment on each count and ordered him to pay the mandatory fines and fees totaling $4637.

¶9        Waldrup appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4033(A)(1) and Article VI, Section 9 of the Arizona Constitution.

**DISCUSSION**

¶10        Waldrup argues that his convictions for actual physical control under Counts 1 and 3 were error because the indictment for those counts alleged driving and not actual physical control. Specifically, he claims the convictions on Counts 1 and 3 were based on (1) duplicitous charges; (2) offenses for which he was not charged; and (3) insufficient

evidence of driving. He further maintains that there was insufficient evidence of actual physical control over the vehicle for all counts, and the prosecutor engaged in error.[2]

**¶11**        Because Waldrup did not object to amending the indictment to include actual physical control in Counts 1 and 3 at or before trial, we review for fundamental error. *See State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018) ("Because Escalante did not object to this evidence, we will not reverse unless the court committed error that was both fundamental and prejudicial."). Under fundamental-error review, a defendant must show: (1) there was an error, (2) under the totality of the circumstances, the error was fundamental, and (3) the defendant was prejudiced by the error. *Id.* at 142, ¶ 21.

## A. The Superior Court Erred by Failing to Require a Verdict That Unanimously Found That Waldrup Committed One of Two Criminal Acts.

**¶12**        Waldrup argues that the State subjected him to duplicitous charges by alleging one criminal charge in the indictment and multiple criminal acts to prove the charge. *State v. Klokic*, 219 Ariz. 241, 244, ¶ 12 (App. 2008) (noting that this disparity is a "duplicitous charge"). Specifically, he argues that he was convicted of either driving to the restaurant or having actual physical control of the vehicle while parked at the restaurant. Without the jury precisely determining which act supported his convictions, he claims he was denied the right to a unanimous jury verdict.

**¶13**        In *Klokic*, the indictment charged that the defendant used a handgun to place the victim in reasonable apprehension of physical injury. 219 Ariz. at 242, ¶ 5. At trial, the State argued that a driving defendant pointed his gun at another driver. *Id.* at 242–43, ¶¶ 3–6. Later, after both drivers exited their vehicles, the defendant pointed his gun at the other driver again. *Id.* The defendant denied both allegations but alternatively argued that he acted in self-defense and in defense of his passenger in the first incident because the victim threw a bottle at his car. For the second

---

[2]        Waldrup uses the term "misconduct," but alleges only prosecutorial error. Our supreme court instructed courts to distinguish between the two. *See In re Martinez*, 248 Ariz. 458, 470, ¶ 47 (2020).

incident, the defendant again argued defense of others because the victim approached him and his passenger with a wrench. *Id.* at 243, ¶ 8.

**¶14** To prove one charge of aggravated assault, the State introduced evidence of both incidents and told the jurors that they could convict him for either. *Klokic*, 219 Ariz. at 242–43, ¶ 6. This court acknowledged that both acts "may have caused only one instance of apprehension of imminent physical injury in the victim that endured throughout his encounter with the defendant." *Id.* at 247, ¶ 28. Nevertheless, the court concluded that because the jury may not have unanimously rejected either of the defendant's defenses, the two acts were not part of the same criminal transaction. *Id.* at ¶ 32 ("[E]ven when both events occur as part of a larger criminal episode, acts may not be considered part of the same criminal transaction if the defendant offers different defenses to each act or there is otherwise a reasonable basis for distinguishing between them.").

**¶15** However, different defenses do not always form a reasonable basis for distinguishing between acts when determining whether a jury verdict was unanimous. In *State v. West*, the defendant was charged with child abuse under A.R.S. § 13-3623. 238 Ariz. 482, 486, ¶ 4 (App. 2015). Per the statute, the indictment alleged that the defendant committed child abuse under three theories: she "intentionally or knowingly caus[ed] physical injury"; she "caus[ed] or permit[ed]" the injury; or she "caus[ed] or permit[ed] [the victim] . . . to be placed in a situation where her health was endangered." *Id.* at 491, ¶ 25. Citing to *Klokic*, West argued that she was entitled to a unanimous verdict regarding one of the three theories presented in the indictment. *Id.* at 492–93, ¶ 31. This court concluded that *Klokic* did not apply because A.R.S. § 13-3623 is an alternative-means statute, under which a defendant may be convicted without unanimous acceptance of any one theory of the case provided there is unanimity regarding the offense committed. *Id.* at 492–96, ¶¶ 34–46. In rejecting West's claim, the court noted that *Klokic*'s multiple-acts analysis could apply to an alternative-means statute if the State "charges the defendant with one offense . . . "and then alleges multiple, distinct acts as to the separate means." *Id.* at 494, ¶ 40.

**¶16** Attempting to avoid its error here, the State cites *State v. Rivera*, 207 Ariz. 69 (App. 2004), and argues that because A.R.S. § 28-1381 is an alternative-means statute, *Klokic*'s multiple-acts analysis is inapplicable. *Rivera* does not help the State's cause. In *Rivera*, an intoxicated defendant left a car that had veered off the road and onto a raised median. 207 Ariz. at 71, ¶ 2. The State charged the defendant with DUI under A.R.S.

§ 28-1381(A). *Id.* at ¶ 3. The defendant was convicted on the alternative theories that he either drove the vehicle or temporarily assumed actual physical control from the passenger's seat by seizing the steering wheel from his girlfriend. The verdict did not specify which theory supported the conviction. *Id.* at ¶ 6. This court concluded that because A.R.S. § 28-1381 is an alternative-means statute, the jurors did not have to agree whether the defendant drove or assumed the vehicle's actual physical control. *Id.* at 71, ¶¶ 6, 10. But in *Rivera*, the State alleged different means by which the defendant might have committed only one act, not the "multiple, distinct acts as to the separate means" contemplated in *Klokic* and *West*. *West*, 238 Ariz. at 494, ¶ 40. By contrast, here, the State argued at trial that Waldrup first drove from the bar to the restaurant, left the car and entered the restaurant, remained at the restaurant "for quite some time," and then returned to his vehicle. *Rivera* does not control under these facts.

¶17　　　　Citing to *State v. Nevins*, the State also argues the trial evidence does not show that Waldrup remained outside of his car for a significant amount of time. 2 CA-CR 2017-0339, 2018 WL 3301554, at *1, ¶ 5 (Ariz. App. July 5, 2018) (mem. decision). There, the court affirmed the conviction of a defendant charged with driving or having actual physical control *immediately* upon parking. *Id*. But *Nevins* is not analogous to this case.

¶18　　　　There was a significant amount of time between the two alleged acts here. The bar Waldrup left closed at 2:00 a.m., and receipts showed he paid at the restaurant at 4:44 a.m. The bar he left was a half-mile to a mile away from the restaurant. It is possible that Waldrup remained in his car for some time after leaving the bar and before he was discovered by officers that morning. Nonetheless, there was a substantial period when he was neither driving nor in actual physical control of the vehicle. Waldrup's driving the vehicle to the restaurant and his subsequent physical control of the vehicle after the restaurant were two separate acts.

¶19　　　　Throughout these events, except for the time he was in the restaurant eating, Waldrup would have met the elements of either driving or actual physical control under A.R.S. § 28-1381. Because Waldrup stopped at the restaurant in between these events, the State could have charged Waldrup with DUI for each period. Thus, *Klokic's* multiple-acts analysis applies. *See, e.g., State v. Tran*, 2 CA-CR 2013-0487, 2014 WL 4755565, at *1, ¶¶ 2–5 (Ariz. App. Sept. 24, 2014) (mem. decision) (applying *Klokic* when defendant argued he was not the driver who crashed a vehicle and got out to apologize and was not in actual physical control of the vehicle when he re-entered it to drive away).

6

¶20 Moreover, because Waldrup had separate defenses for both the driving and actual physical control allegations, there was sufficient reason to conclude that the two acts were not a part of the same criminal transaction. Thus, Waldrup was entitled to a unanimous verdict on one act or the other, either through jury instructions that required unanimity on a specific act or an indication by the State that only one act constituted the crime.

**B. Because the Jurors May Not Have Rendered a Unanimous Verdict Based on the Evidence, Arguments, and Instructions Presented, the Error Was Fundamental.**

¶21 The State argues that it sought to prove only actual physical control at trial. It made several comments to indicate this throughout the trial. During its opening statement, the State said,

> Ladies and gentlemen of the jury, this case is about driving under the influence, also commonly referred to as a DUI. However, it's not your typical DUI case. This case falls under a particular category of DUI known as actual physical control.

> You're not going to hear testimony or have direct evidence of driving, but you will hear about the circumstances in which the defendant, Bob Waldrup, had actual physical control of his vehicle while he was under the influence of an intoxicating liquor.

On rebuttal argument, the State argued that the case "really comes down to actual physical control" and closed with:

> Ladies and gentlemen of the jury, you should find beyond a reasonable doubt because you should be firmly convinced that Bob Waldrup had actual physical control of his vehicle without a certified ignition interlock device while his driver's license was suspended while he was under the influence of alcohol or while his blood alcohol concentration level was above a .08. Thank you.

¶22 However, the State introduced testimony from Castillo that challenged Waldrup's account to the officers that he was driven to the restaurant by a friend. In its closing arguments, the State again noted the lack of evidence that Waldrup was driven by a friend and invited the jury to infer that Waldrup drove from the bar to the restaurant:

He then arrived at Denny's, and he told Officer Teschler he
got to Denny's because a friend of his, Angel, drove him, but
there's no evidence of Angel. She didn't testify in front of you
today. She wasn't called as a witness.

\*     \*     \*

Officer Teschler asked Bob Waldrup, hey, how can I get a hold
of Angel? How can we find out that she was the one who
drove you from McKee's Pub and Grill down to the Denny's?
How do we get a hold of her?

No good answer. No way to contact her. No address. No
known location. You may infer that it wasn't Angel who was
driving but rather it was Bob from McKee's down to Denny's.
Nonetheless, he did admit to drinking, and he even admitted
next he was going to go to another bar known as the Fraternal
Order of Eagles.

We recognize that the State did not argue that Waldrup's drive from the bar
to the restaurant met any count but there was still a risk of jury confusion.
*See, e.g.*, *State v. Lerch*, 2 CA-CR 2014-0225, 2016 WL 739480, at *4, ¶ 17 (Ariz.
App. Feb. 25, 2016) (mem. decision) ("Although the state never explicitly
argued that the jury could find Lerch guilty of aggravated assault based on
either act, it never clarified or explained that the assault charges were based
*only* on the balcony incident." (emphasis added)). It was not disputed that
Waldrup was intoxicated after drinking at the bar, and the State attempted
to persuade the jury that Waldrup drove from that bar. Without a clarifying
instruction, the jury could have rendered a non-unanimous verdict.

## C. Waldrup Has Failed to Prove Prejudice.

**¶23**      The State argues that a potential non-unanimous jury verdict
is insufficient to show prejudice. Alternatively, the State maintains that the
verdict would have been unanimous because any reasonable jury would
have found that Waldrup had actual physical control of the vehicle.

**¶24**      When a verdict may not have been unanimous, a potential
non-unanimous verdict does not create fundamental, *prejudicial* error if a
reasonable jury would have found beyond a reasonable doubt that either of
the incidents established the crime alleged. *State v. Payne*, 233 Ariz. 484, 509,
¶ 90 (2013) ("Even if an error did occur, Payne was not prejudiced—the
failure to seek medical care itself satisfied the charge, and no reasonable
jury could have found that Payne was not guilty of child abuse under this

theory."). Here, while the Waldrup may have argued he was not in actual physical control of the vehicle after exiting the restaurant, the evidence is overwhelming to the contrary. *See infra* ¶¶ 31–32. Therefore, we find no prejudice resulting from the fundamental error in this case.

**D. The State Did Not Violate Waldrup's Constitutional Rights by Convicting Him of Actual Physical Control Where the Text of the Indictment Alleged Only Driving Under the Influence.**

¶25 Waldrup argues that he was convicted on offenses for which he was not charged. Article 2, Section 24 of the Arizona constitution grants the accused "the right to . . . demand the nature and cause of the accusation against him, [and] to have a copy thereof." Likewise, Section 30 states that "[n]o person shall be prosecuted criminally in any court of record for felony or misdemeanor, otherwise than by information or indictment." Ariz. Const. art. 2, § 30. Consistent with this principle of notice, an indictment is defined as "a plain, concise statement of the facts sufficiently definite to inform the defendant of a charged offense." Ariz. R. Crim. P. 13.1(a).

¶26 However, the State had no obligation to notify Waldrup in the indictment that he would be prosecuted under a theory of actual physical control instead of driving. *See State v. Tison*, 129 Ariz. 526, 538 (1981). In *Rivera*, the defendant argued he was denied due process when the State indicted him on the theory that he drove under the influence and, at the trial, prosecuted him on the alternative theory that he was in actual physical control of the vehicle. 207 Ariz. at 70–71, ¶ 1. This court rejected that argument. *Id.* at 71–74, ¶¶ 7–15.

¶27 Waldrup was charged with both driving and having actual physical control over the vehicle on the same date and place in Counts 2 and 4. The only other shared difference between the allegations in Counts 1 and 3 and Counts 2 and 4 was whether, during these events, he failed to install a required interlock device. Nineteen days before trial, Waldrup was present at an arraignment where the State indicated that "the question [for trial] will be actual physical control" without referring to a specific charge. Waldrup had sufficient notice to satisfy due process. *See Rivera*, 207 Ariz. at 73, ¶ 13.

**E. There was Sufficient Evidence for a Rational Trier of Fact to Conclude that Waldrup Had Driven or Had Actual Physical Control of the Vehicle.**

¶28 We review whether sufficient evidence supports a conviction *de novo*, but we resolve conflicts in the evidence against the defendant and

view all facts in a light supporting the verdict. *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014). Evidence presented at trial is sufficient to support a conviction if substantial evidence supports the jury verdict. *Id.* ("Substantial evidence is evidence that reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt.") (internal quotations omitted). "The sufficiency of the evidence must be tested against the statutorily required elements of the offense." *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005). Here, the only disputed element is Waldrup's alleged driving or actual physical control of the vehicle. Because Waldrup may have been guilty on all counts under either a theory of actual physical control or of driving, we will affirm his conviction unless no reasonable jury could have convicted Waldrup under either theory beyond a reasonable doubt.

**¶29**      A jury could have reasonably concluded that Waldrup drove himself to the restaurant. Through testimony by an officer, the State noted that the vehicle was parked "askew" in the parking spot, which a jury may reasonably infer as evidence that the driver was intoxicated. Waldrup admitted that he previously stopped at two bars earlier in the morning before stopping at the restaurant. Although the bars may have been only half a mile from the restaurant, there is no dispute that Waldrup went from the last bar to the restaurant by car. He explained that his friend Angel drove him there, but he was unable to produce any contact information for this person, and the police could not identify her by her first and last name.

**¶30**      More importantly, any jury would have reasonably concluded that Waldrup had actual physical control of the vehicle in the parking lot. The jury heard testimony that the keys were in the ignition, Waldrup was in the driver's seat, and he was awake. The evidence proves Waldrup was in actual physical control of the vehicle. *State v. Love*, 182 Ariz. 324, 327 (1995) ("The totality approach permits drunk drivers to be prosecuted under a much greater variety of situations-for example, even when the vehicle is off the road with the engine not running.").

**F. Waldrup Was Not Denied the Right to a Fair Trial Due to Prosecutorial Error.**

**¶31**      Waldrup did not raise prosecutorial error in the superior court, so we review the issue for fundamental error. *State v. Prince*, 226 Ariz. 516, 537, ¶ 84 (2011).

**¶32**      We will reverse a conviction because of prosecutorial error if: (1) misconduct is present; and (2) a reasonable likelihood exists that the

misconduct could have affected the jury's verdict, thereby denying the defendant a fair trial. *State v. Smith*, 250 Ariz. 69, 99, ¶ 138 (2020). To establish prejudice, a defendant must show that a reasonable jury could have plausibly and intelligently reached a different verdict without the prosecutorial error. *Id.; Escalante*, 245 Ariz. at 144, ¶¶ 29, 31; *State v. Moody*, 208 Ariz. 424, 459, ¶ 145 (2004). Although a defendant must typically establish prejudice, a "defendant claiming cumulative error based on prosecutorial misconduct need not separately assert prejudice since a successful claim necessarily establishes the unfairness of a trial." *State v. Vargas*, 249 Ariz. 186, 190, ¶ 13 (2020).

### 1. The State Did Not Create Fundamental Error by Commenting on Waldrup's Friend's Absence as a Witness.

¶33 Counsel is given "wide latitude in presenting closing arguments to the jury" because they "are permitted to comment on the evidence already introduced and to argue reasonable inferences therefrom." *State v. Gonzales*, 105 Ariz. 434, 436–37 (1970). The State may comment upon the defendant's failure to call a particular witness to testify to demonstrate the absence of exculpatory evidence if the comment does not call attention to the defendant's failure to testify. *State v. Edmisten*, 220 Ariz. 517, 525–26, ¶¶ 26–27 (App. 2009) (no prosecutorial error where the State reminded the jury that it had the burden of proof but commented on the defendant's failure to call a witness who, according to another witness's testimony, had been present at an identification that the defendant alleged had never happened).

¶34 Here, the State said the following:

> [Officer Teschler] investigated this incident by following up with [Waldrup] and asking him some questions, such as where he was that evening. [Waldrup] stated to Officer Teschler he was at the Flying X, which is a bar, and he had 2 pints there. He then went over to McKee's Pub and Grill, which we have a receipt for at 2:00 a.m. in the morning, and he told Officer Teschler at McKee's he had 3 beers. He consumed some alcohol.

> He then arrived at Denny's, and he told Officer Teschler he got to Denny's because a friend of his, Angel, drove him, but there's no evidence of Angel. She didn't testify in front of you today. She wasn't called as a witness.

*       *       *

Officer Teschler asked Bob Waldrup, hey, how can I get a hold of Angel? How can we find out that she was the one who drove you from McKee's Pub and Grill down to the Denny's? How do we get a hold of her?

No good answer. No way to contact her. No address. No known location. You may infer that it wasn't Angel who was driving but rather it was [Waldrup] from McKee's down to Denny's.

¶35 The State argued that Waldrup's friend was never with him that night, implying that she did not exist. Because Waldrup alleged that this person drove him to the restaurant, and because he had failed to produce evidence of her existence, the State correctly commented on the exculpatory evidence's absence. *See Edmisten*, 220 Ariz. at 525–26, ¶¶ 26–27. Finally, both the jury instructions and the State informed the jury the State had the burden of proof. *Cf. id.* at 522–23, ¶¶ 12–16 (No error where jury instructions and the prosecutor instructed the jury of the State's burden of proof).

### 2. The State Did Not Create Fundamental Error by Mischaracterizing the Totality of the Circumstances Test for Actual Physical Control.

¶36 "A misstatement of law constitutes fundamental error when it goes to the foundation of the case, takes from the defendant a right essential to his defense, or is so egregious that he could not possibly have received a fair trial." *State v. Murray*, 247 Ariz. 583, 593, ¶ 28 (App. 2019) (quotation omitted) (review granted Aug. 25, 2020). A court must determine whether such an error occurred by determining "(1) whether the prosecutor's statements called inappropriate matters to the jury's attention and (2) the probability that the jury was in fact influenced by those statements." *Id.*

¶37 Here, the prosecutor argued as follows:

As soon as he turns on the engine, he can easily back out and right then and there be on a main road, the same type of road you saw Officer Castillo pull up from. And ladies and gentlemen, these conditions or factors here are nothing more than sufficient conditions.

The state doesn't need to meet every single one of them. As a matter of fact, some of them don't tell you anything. Some of

them don't tell you whether he is or isn't in actual physical control because you could be both based on some of these factors.

What time of day it is or what time it is during the day, that doesn't tell you whether someone is or is not in actual physical control. The weather conditions, that doesn't tell you that, nor does the heater or air-conditioning being on or whether the windows were up or down because people park their car, they leave their windows down, move away from it. They're not in actual physical control.

The time of day could be at any time. Some people leave their windows rolled down overnight, and they're not in actual physical control, or maybe they are.

\* \* \*

You don't need all of these factors. They're here to assist you, and any one of them is a sufficient condition to show actual physical control, but the big one is whether the defendant had current or imminent control of his vehicle and it presented a real danger to himself or others.

¶38 Even if the State's statements regarding actual physical control factors were erroneous, the court cured any confusion by correctly instructing the jury regarding actual physical control factors and how they were to be weighed. The jurors received a copy of the jury instructions and were able to use them during deliberation. The jurors were also admonished that what counsel said was not evidence. We presume jurors follow their instructions, *State v. Pandeli*, 242 Ariz. 175, 189, ¶ 58 (2017), and the State's mischaracterization of the factor analysis did not create fundamental error.

## CONCLUSION

¶39      We affirm Waldrup's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:      JT